**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE COALITION FOR APP FAIRNESS; FORBES TATE PARTNERS LLC; AND MEGHAN DIMUZIO,<br><br>        Non-Party Movants<br><br>   v.<br><br>APPLE INC.,<br><br>        Defendant. | Misc. Case No. 21-mc-00098<br><br>Judge John D. Bates<br><br>Underlying Litigation:<br><br>*Cameron v. Apple Inc.,*<br>   No. 4:19-cv-3074<br><br>*In re Apple iPhone Antitrust Litigation,*<br>   No. 4:11-cv-6714<br><br>U.S. District Court for the Northern District Of California |

**STATEMENT OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO MOTION TO QUASH SUBPOENAS AND**
**IN SUPPORT OF CROSS MOTION TO TRANSFER,**
**OR IN THE ALTERNATIVE COMPEL,**
**AND ITS CROSS MOTION TO EXPEDITE PROCEEDINGS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 5

    I.    The Northern District of California is Steeped in the Complex
        Details of the Multiple Related App Store Cases Moving on the
        Same Discovery Track .............................................................................. 5

    II.   The Coalition Wholly Avoids Describing its Origin as an Epic
        Puppet ..................................................................................................... 10

    III.  Class Certification Opposition is Due August 10 ................................... 13

    IV.  History of the Subject Subpoenas ......................................................... 14

ARGUMENT ....................................................................................................... 16

    I.    APPLE'S MOTION TO TRANSFER SHOULD BE GRANTED ...................... 16

        A.    Legal Standard for Motion to Transfer .................................... 16

        B.    Transfer to the Northern District of California Is Warranted
            Given the Procedural Posture and Pendency of the
            Underlying Litigation in the Northern District of California ........ 17

        C.    Transfer is Warranted Given the History and Complexity of
            the Underlying Litigations ......................................................... 19

    II.   IN THE ALTERNATIVE, MOVANTS' MOTION TO QUASH
        SHOULD BE DENIED AND APPLE'S MOTION TO COMPEL
        SHOULD BE GRANTED ............................................................................ 21

        A.    Legal Standard for Motion to Compel ...................................... 21

        B.    The First Amendment Associational Privilege Does Not
            Apply ....................................................................................... 22

        C.    Apple's Need for These Documents Outweighs Movants'
            Alleged First Amendment Privilege .......................................... 29

        D.    Movants' Arguments Concerning Undue Burden Fail. ............ 33

    III.  APPLE'S MOTION TO EXPEDITE SHOULD ALSO BE
        GRANTED ............................................................................................... 33

CONCLUSION ................................................................................................... 34

# TABLE OF AUTHORITIES

*AFL-CIO v. FEC*,
  333 F.3d 168 (D.C. Cir. 2003) ...................................................................23, 24, 28

*Americans for Prosperity Foundation v. Cal. AG*,
  No. 19-251, S. Ct. ___ (July 1, 2021) ....................................................................25

\* *In re Anonymous Online Speakers*,
  661 F.3d 1168 (9th Cir. 2011) .................................................................................23

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019)...............................................................................................6

*Bd. of Governors of Fed. Rsrv. Sys. v. Interfi nancial Servs., Ltd.*,
  104 F. Supp. 2d 39 (D.D.C. 2000) ..........................................................................22

*Black Panther Party v. Smith*,
  661 F.2d 1243 (D.C. Cir. 1981), *cert. granted, judgment vacated by* 458 U.S.
  1118 (1982).........................................................................................................23, 24

\* *In re Braden*,
  344 F. Supp. 3d 83 (D.D.C. 2018) ................................................................ *passim*

*Brock v. Local 375, Plumbers Int'l. Union of Am.*,
  860 F.2d 346 (9th Cir. 1988) ...................................................................................24

*Crownover v. Crownover*,
  No. 2:15-CV-132-AM-CW, 2017 WL 10575859 (W.D. Tex. July 12, 2017) .......33

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001)......................................................................................................29

\* *In re Disposable Contact Lens Antitrust Litig.*,
  306 F. Supp. 3d 372 (D.D.C. 2017)...........................................................16, 17, 20, 21

*Duck v. SEC.*,
  317 F.R.D. 321 (D.D.C. 2016)..................................................................................18

*Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*,
  309 F.R.D. 41 (D.D.C. 2015)....................................................................................18

*Fishon v. Peloton Interactive, Inc.*,
  336 F.R.D. 67 (S.D.N.Y. 2020) ...............................................................................33

*Flynn v. FCA US LLC,*
    216 F. Supp. 3d 44, 47 (D.D.C. 2016) ...................................................................20

*Flynn v. Square One Distribution, Inc.,*
    No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673 (M.D. Fla. May 25, 2016).....................26

*FTC v. Sysco Corp.,*
    83 F. Supp. 3d 271 (D.D.C. 2015) ..................................................................21, 22

*Glictronix Corp. v. AT&T,*
    603 F. Supp. 552 (D.N.J. 1984) .......................................................................30

*Google, Inc. v. Digital Citizens Alliance,*
    No. 15-0707, 2015 WL 4930979 (D.D.C. July 31, 2015) ...................................18

*Klayman v. Judicial Watch, Inc.,*
    No. 06-cv-670, 2008 WL 11394177 (D.D.C. Jan. 8, 2008)...................................26

*Mas v. Cumulweus Media Inc.,*
    C 10-1396-EMC, 2010 WL 4916402 (N.D. Cal. Nov. 22, 2010) ...........................32

*McGehee v. U.S. Dep't of Justice,*
    362 F. Supp. 3d 14 (D.D.C. 2019) ..................................................................33, 34

*NAACP v. Alabama,*
    357 U.S. 449 (1958)............................................................................................25

*Nat'l Org. for Marriage v. McKee,*
    723 F. Supp. 2d 236 (D. Me. 2010) ....................................................................27

*North v. Walsh,*
    881 F.2d 1088 (D.C. Cir. 1989).........................................................................23

*The Ohio Org. Collaborative v. Husted,*
    No. 2:15-CV-01802, 2015 WL 7008530 (S.D. Ohio Nov. 12, 2015) ...................24

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    993 F.3d 774 (9th Cir. 2021) ..............................................................................30

* *Perry v. Schwarzenegger,*
    591 F.3d 1147 (9th Cir. 2010) ..................................................................... *passim*

*Raygoza v. Holland,*
    No. 16-CV-02978-EMC, 2018 WL 6002325 (N.D. Cal. Nov. 15, 2018) ..............31

*Seattle Times Co. v. Rhinehart,*
    467 U.S. 20 (1984)............................................................................................22

*Sol v. Whiting*,
No. CV-10-01061-PHX-SRB, 2013 WL 12098752 (D. Ariz. Dec. 11, 2013)........................28

*Staley v. Gilead Scis., Inc.*,
Case No. 19-cv-02573-EMC(LB), 3 (N.D. Cal. Aug. 28, 2020)................................................32

* *Tesla Motors, Inc. v. Johnson*,
No. 1:16-CV-1158, 2017 WL 11500988 (W.D. Mich. Dec. 11, 2017).....................22, 28, 31

*In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*,
113 F. Supp. 3d 286 (D.D.C. 2015)..............................................................................................17

*U.S. ex rel Pogue v. Diabetes Treatment Ctrs. of Am.*,
235 F.R.D. 521 (D.D.C. 2006)......................................................................................................21

*U.S. v. Anderson*,
881 F.2d 1128 (D.C. Cir. 1989)....................................................................................................31

*United States v. Abel*,
469 U.S. 45 (1984).........................................................................................................................31

*United States v. Comley*,
890 F.2d 539 (1st Cir.1989)...........................................................................................................27

* *Wultz v. Bank of China, Ltd.*,
304 F.R.D. 38 (D.D.C. 2014)..................................................................................................17, 19

*Wyoming v. U.S. Dep't of Agric.*,
208 F.R.D. 449 (D.D.C. 2002)................................................................................................20, 21

*XY, LLC v. Trans Ova Genetics, L.C.*,
307 F.R.D. 10 (D.D.C. 2014).........................................................................................................20

**Statutes**

Sherman Act Section 2.................................................................................................................6, 10

U.S. Code § 1657.............................................................................................................................33

**Other Authorities**

Fed. R. Civ. P. 37(a)(1)...................................................................................................................21

Fed. R. Civ. P. 45................................................................................................................1, 8, 16, 18

Federal Rule of Civil Procedure 23 ...........................................................................................13, 30

Local Civil Rule 7(m).......................................................................................................................15

Apple Inc. ("Apple") submits this Opposition to the Motion to Quash Subpoenas filed by the Coalition for App Fairness (the "Coalition"), Forbes Tate Partners LLC ("Forbes Tate"), and Meghan DiMuzio ("DiMuzio," with the Coalition and Forbes Tate, collectively, the "Movants") and in support of Apple's Cross-Motions to Transfer and, in the alternative, Compel and its Cross-Motion to Expedite these proceedings ("Apple's Cross-Motions").

## PRELIMINARY STATEMENT

Apple served Movants each with a Rule 45 subpoena seeking documents highly relevant to two ongoing antitrust class action cases brought against Apple in the Northern District of California before U.S. District Judge Yvonne Gonzalez Rogers and U.S. Magistrate Judge Thomas S. Hixson.  These two class actions, one brought by a putative class of app developers and the other by a putative class of app consumers, essentially assert the same claims against Apple as asserted in a related, third antitrust action, filed in August 2020 by Epic Games, Inc. ("Epic"), the developer of the popular *Fortnite* video game, and which recently concluded in a three-week bench trial on May 24, 2021.[1]  Judge Gonzalez Rogers and Magistrate Judge Hixson are intimately familiar with the facts of these complex antitrust cases, and Magistrate Judge Hixson has issued at least 18 orders deciding at least 25 discovery disputes that arose in the coordinated discovery proceedings required of these three actions, including disputes involving third party subpoenas.

Rather than have this motion heard before Magistrate Judge Hixson, as Apple requested, Movants raced to have this Court determine whether the documents Apple seeks are sufficiently relevant to the underlying class actions pending before Judges Gonzalez Rogers and Hixson.  In

---

[1]  A fourth antitrust action filed by app marketplace SaurikIT, LLC in December 2020 has been related to these cases and is also pending before Judge Gonzales Rogers and Magistrate Judge Hixson.  *SaurikIT, LLC v. Apple, Inc.*, 20-cv-8733-YGR.

their Moving papers, the Movants paint a misleading picture that is contradicted by evidence adduced at the recently-concluded trial in the *Epic* case presided over by Judge Gonzalez Rogers. Movants portray the Coalition as some garden variety non-profit organization engaged in political speech protected by the First Amendment and an innocent bystander not "engage[d] in litigation efforts related to its policy goals."  On the contrary, the evidence adduced at the trial before Judge Gonzalez Rogers exposed that Epic formed and funded the Coalition at around the same time Epic sued Apple as part of Epic's overall litigation and public relations strategy referred to internally at Epic as "Project Liberty."  To create and "help manage" the Coalition, Epic partnered with the Messina Group, who was tasked "to establish a reason for [the Coalition] to exist (either organic or manufactured)" and to develop a "[m]anufactured inflection point." (*See* Declaration of Michael R. Huttenlocher, dated July __, 2021 ("Huttenlocher Decl.") Exs 4 at 1418:17–1420:5 (Weissinger) and 5.)

The Coalition is thus not Apple's "political" adversary or a bystander engaged in political speech protected by the First Amendment, as the Movants claim.  Rather, the Coalition is a litigation adversary whose existence was admittedly "manufactured" to serve a strategic litigation purpose.  Indeed, some of its most prominent members (*e.g.*, Epic and founding Coalition members, Yoga Buddhi Co., ("Yoga Buddhi") and Match Inc. ("Match")) testified against Apple in the *Epic* litigation and/or provided documents and depositions in support of Epic.  Apple is entitled to know the degree to which the Coalition (directly or indirectly through these members) is coordinating with the class plaintiffs in the related class actions, as would be expected given the organization's narrow mandate because its members stand to gain substantially if the lawsuits against Apple are successful.

Apple's subpoenas seek documents relating to the Coalition's role in supporting the litigations against Apple and communications about the very Apple App Store policies that are being challenged in the class actions, including communications between actual or potential Coalition members where they admitted that Apple's policies are pro-competitive and/or benefitted them.  Such documents are clearly relevant to the merits and Apple's defenses in the litigations.  They are also highly relevant to issues of class certification for which Apple must file its opposition brief by August 10, 2021.  The documents sought by the subpoenas are expected to demonstrate, among other things, heterogeneity among putative class members.  This includes whether certain class members were uninjured by Apple's conduct and/or would be worse-off should the putative class actions (and the Coalition more generally) prevail in their battles against Apple and whether there are developers/competitors that would be disparately impacted by changes in App Store policies that make the putative class representatives inadequate to represent the putative class.

In the event that the Court denies the Motion to Transfer this Motion to the Northern District of California, the Court should deny Movants' motion to quash and grant Apple's cross-motion to compel.  The Movants have refused to produce a single document and assert a *blanket objection* that "all" of Movants' documents are protected from disclosure by the First Amendment.  For the reasons stated below, the Movants cannot make out a *prima facie* case of impairment of the First Amendment rights of the Movants or the Coalition members.  Nothing in the First Amendment or any other law shields from discovery a group of well-heeled businesses that seek to advance commercial interests under the banner of a litigation-created "Coalition."  Rather, the First Amendment is designed to protect only political speech, not the commercial

speech at issue in this matter. The commercial speech at issue here falls outside of the First Amendment privilege as applied by the courts.

In reality, it is doubtful that the Movants actually believe their own rhetoric. Coalition member Yoga Buddhi, represented by the same counsel as the Coalition itself as well as other of its members, was also subpoenaed by Apple seeking similar documents but Yoga Buddhi agreed to produce the documents at issue and abruptly withdrew its claim that the documents were protected by some First Amendment privilege. There is no mystery why Yoga Buddhi made this strategic decision: to avoid ripening a conflict that would be heard in the Northern District of California where Yoga Buddhi is located. Yoga Buddhi and its lawyers understood that if Yoga Buddhi continued to oppose production, the dispute would be expeditiously heard by Judge Hixson, foiling Movants' plan for a delayed result made by a Court with less familiarity with the facts.

Additionally, Coalition members Basecamp, Tile, and FlickType claim to fear retaliation by Apple if their communications are disclosed, but this claim is belied by the reality that each of them has already been publicly vocal about their opposition to Apple. The issue is not about retaliation or their public statements, which they are certainly entitled to make; rather, Apple is entitled to fully defend itself in a litigation in which the Coalition and its members have participated at plaintiffs' behest. With respect to the retaliation charge in particular, each of these app developers currently have their apps listed on the App Store and are subject to the same Apple Guidelines as all other developers (and none of them claim otherwise). These developers have no legitimate basis to fear reprisal for communications that will do no more than convey private opposition to policies that they have already opposed publicly. Their alleged "fears" are ginned up to avoid their production obligations.

Finally, Movants can hardly be heard to complain about the scope of certain document demands when they refused to engage in any meaningful meet and confer with Apple, and chose instead to stand on their blanket First Amendment privilege objection.  Movants have identified no documents that they would be willing to produce, refused to discuss custodians or search terms, and have declined to articulate any actual burden in responding to the subpoena.  For example, DiMuzio has been executive director of the Coalition for only five (5) months but appears to claim that applying any search terms is too burdensome.

Movants should be required to undergo a collection and review of documents responsive to the subpoenas – and expedite the production of documents germane to Apple's upcoming class certification opposition.  In the event that the Movants encounter some burden in responding to the subpoenas, the Court should require Movants to substantively meet and confer with Apple to identify ways to ease that burden while still providing Apple with the documents to which it is entitled.

## BACKGROUND

I.   **The Northern District of California is Steeped in the Complex Details of the Multiple Related App Store Cases Moving on the Same Discovery Track**

To protect the privacy and security of iPhone users, Apple requires that all iOS apps be distributed through the App Store after each app has gone through Apple's rigorous review process, a combination of human and machine review to ensure that the app is safe for users.[2] *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (D.E. 778-3 ¶ 10).  This review process provides Apple with a competitive advantage against the many competing app stores by allowing Apple to provide best-in-class privacy and security for its customers, a key market differentiator

---

[2] Apple likewise requires App Review for apps distributed on iPad and iPad OS devices to ensure the privacy and security of those users' devices.

for Apple. *Id.* In addition, for paid apps and in-app purchases only, Apple charges app developers either a 15% or 30% commission depending on the transaction type. *Id.* ¶ 2. ¶¶ 161.2, 166. Apple charges no commission at all for the vast majority of app downloads, which are free of charge to the consumer.

On December 29, 2011, a putative class of iPhone[3] users sued Apple alleging, among other things, that the above Apple policies concerning the distribution of apps on the App Store violated Section 2 of the Sherman Act (the "Consumer Class Action"). *In re Apple iPhone Antitrust Litigation,* No. 11-cv-6714-YGR (D.E. 1.) The Consumer Class Action purports to represent millions of iPhone and iPad users in the United States. *Id.* In 2013, the Consumer Class Action was originally dismissed on standing grounds but, after a 6-year battle in the appeals courts, the Supreme Court of the United States found that the consumers did have standing to bring its action, remanded the case back to the trial court, and the case has proceeded on the merits since then. *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019).

Apple also faces antitrust litigation from the developer side of the App Store platform. In 2019, after the Consumer Class Action was remanded from the Supreme Court, a putative class of app developers (the "Developer Class Action") brought a similar action against Apple alleging violations of Section 2 of the Sherman Act and California's Unfair Competition Act for the same or similar conduct alleged in the Consumer Class Action. *Cameron v. Apple, Inc.*, No. 19-cv-3074-YGR (D.E. 1.) The Developer Class Action purports to represent tens of thousands of iOS app developers for *all* types of apps – from games to spreadsheets and photo editors to social media apps. *Cameron v. Apple, Inc.*, No. 19-cv-3074-YGR (D.E. 53.) The Coalition members and prospective members are among the members of the putative class in the Developer Class

---

[3] In September 2020, consumer class plaintiffs filed their Third Amended Complaint which expanded the purported class to include iPad users. *In re Apple iPhone Antitrust Litigation,* No. 11-cv-6714-YGR (D.E. 229.)

Action.  Indeed, the members of the Coalition include some of the putative class members with the largest damage claims, and thus, have the most to gain from the Developer Class Action.

In August of 2020, the Apple App Store litigations became more complicated when Epic, a putative developer class member, opted out of the Developer Class Action to bring its own antitrust complaint against Apple (the "*Epic* Action") challenging the same conduct challenged in the Developer Class Action.  Epic is a multi-billion dollar game developer and is the creator of the popular mobile and console game *Fortnite*.  Epic planned this litigation against Apple for months under the internal moniker "Project Liberty."  (*See* Declaration of Michael R. Huttenlocher, dated July 15, 2021 ("Huttenlocher Decl.") Ex. 1.)

When it was ready to launch "Project Liberty," Epic triggered a hidden line of code in its *Fortnite* game that redirected Apple's share of the consumer's purchase to Epic, cutting Apple out of the transaction entirely and allowing Epic to use Apple's platform without paying for it. *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (D.E. 778-3 ¶ 298-300.)  Epic admitted that this act was a knowing breach of its developer agreements with Apple.  *Id.* ¶ 298.  Once Apple detected the contractual breach, Apple removed *Fortnite* from the App Store as Epic knew it would.  *Id.* ¶ 302.  With this being the triggering point for "Project Liberty," Epic then filed its planned antitrust complaint against Apple – making substantially the same allegations as the Developer Class Action – and sought a preliminary injunction to enjoin Apple's App Store practices and get *Fortnite* back on the App Store.  *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (D.E. 1.)  Epic was able to jump the line ahead of both the consumer and developer classes, and after a seven-month fact-and-expert discovery period, Judge Gonzalez Rogers presided over a three-week bench trial from May 3-24, 2021.  The record in that matter is now complete with a decision from the Court pending.

To complete the *Epic* trial on the expedited schedule set by the Court, Judge Gonzalez
Rogers and Magistrate Judge Hixson carefully managed the discovery process in all of the
antitrust litigation brought against Apple concerning the App Store.  (*See* Huttenlocher Decl.
Exs. 9, 10, and 11.)  Given the overlapping facts in the *Epic* Action, the Consumer Class Action,
and the Developer Class Action, Judge Gonzalez Rogers and Magistrate Judge Hixson required
comprehensive coordinated discovery in all three cases.  *See, e.g., Cameron v. Apple, Inc.*, No.
19-cv-3074-YGR (D.E. 80, 136); *In re Apple iPhone Antitrust Litigation,* No. 11-cv-6714-YGR
(D.E. 194, 259.)  All discovery engaged in during the *Epic* Action was shared with the putative
class counsel and depositions of Apple's executives and third parties were coordinated with the
putative class counsel who were able to ask questions of the Apple witnesses.  (*See* Huttenlocher
Decl. ¶ 14.)

In a matter of months, Apple produced over six million documents, plaintiffs deposed 16
Apple executives and employees and Apple deposed 14 Epic fact witnesses plus six putative
class representatives.  (*See* Huttenlocher Decl. ¶ 15.)  Magistrate Judge Hixson has also ruled on
a number of discovery disputes in these three litigations, including motions to compel documents
from third-parties.  *See, e.g., Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (D.E. 296,
356, 399.)  In addition, the parties to the litigation also served a number of Rule 45 subpoenas
upon third parties that are in the possession of relevant documents.  Given the highly sensitive
material at issue in these litigations, Judge Gonzalez Rogers entered a protective order governing
the production of highly confidential materials that permit the litigants *and non-parties* to
designate materials as highly confidential to limit their distribution only to attorneys as follows:

> Unless otherwise ordered by the Court or permitted in writing by the
> Designating Party, a Receiving Party may disclose any information
> or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS'

EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) Designated House Counsel of the Receiving Party (i) who has no involvement in competitive decision-making, (ii) to whom disclosure is reasonably necessary for this litigation, (iii) who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A, and (iv) as to whom the Designating Party has agreed in writing.

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), without disclosure of the identity of the Expert as long as the Expert is not a current officer, director, or employee of a competitor of a Party or anticipated to become one;

(d) the Court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); (f) mock jurors who have signed an Undertaking, the content of which shall be agreed upon by the Parties; and

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

*Cameron v. Apple, Inc.*, No. 19-cv-3074-YGR (D.E. 85); *In re Apple iPhone Antitrust Litigation*, No. 11-cv-6714-YGR (D.E. 199); *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (D.E. 112).

In addition to being deeply engaged in the coordination of fact discovery for these three actions, Judge Gonzalez Rogers and Magistrate Judge Hixson are steeped in the complex and

overlapping antitrust issues at issue in these three cases.  (Huttenlocher Decl. Exs. 10, 11, and 12.)  During the three-week *Epic* bench trial, Judge Gonzalez Rogers heard testimony from 14 fact witnesses and 12 expert witnesses concerning, among other things, the history of the App Store, Apple's privacy and security measures, Apple's financial performance, the proper definition of an antitrust market, the impact of switching costs on mobile device users, consumer surveys, forensic accountants, and mobile operating system security architecture.  (Huttenlocher Decl. ¶ 16.)  Moreover, Judge Gonzalez Rogers was presented with extensive legal arguments from the parties in their pre- and post-trial findings of fact and conclusions of law.  The plaintiffs in these matters have advanced novel theories of antitrust law under Section 2 of the Sherman Act, including that Apple is a monopolistic firm in a single-brand market.

## II.   The Coalition Wholly Avoids Describing its Origin as an Epic Puppet

The Movants relegate their entire discussion of the *Epic* Action to a mere footnote and state that the "Movants had no involvement in that case."  (Movants' Statement of Points and Authorities ("Mem.") at 6 n.2 (citing Movants' Ex. D (DiMuzio Decl.).)  This is simply not true. The *Epic* Action and Project Liberty is the origin of the Coalition.  The Coalition pitches itself to this Court as a public advocacy group that "advocates for fair competition across the app ecosystem and opposes anti-competitive practices by owners of online platforms, including Apple's App Store, harmful to app developers and consumers."  (Mem. at 3.)  This is a ruse and fails to present this Court with evidence well known to Judges Gonzalez Rogers and Magistrate Judge Hixson that shows the contrary.

The evidence in the *Epic* litigation, including at trial, showed that Epic conceived of, created, and funded the Coalition as part of a litigation and PR strategy known as "Project Liberty."  (*See* Huttenlocher Decl. Ex. 1.)  Epic believed that it was not a sympathetic figure in its challenge to Apple's App Store policies so Epic formed the Coalition, with the help of an

affiliate of the PR firm Greenbrier named the Messina Group, and an army of lawyers from
Cravath Swaine & Moore LLP.  (*See id.* Exs. 1, 2, and 3 at 279:19-280:3 (Sweeney) and 1414:2-
15 (Weissinger).)  Epic partnered with the Messina Group to create and "help manage" the
Coalition.  (*See id*. Ex. 3.).  The Messina Group was tasked "to establish a reason for [the
Coalition] to exist (either organic or manufactured)" and to develop a "[m]anufactured inflection
point."  (*See id*. Ex. 4 at 1418:17–1420:5 (Weissinger); Ex. 5.)  The Coalition recruited small and
medium sized app developers to join it, all in an effort to give Epic's challenge a more palatable
public face.

Epic's PR and legal teams tasked the Coalition "with generating continuous media and
campaign tactic pressure" on Apple (*Id.* Ex. 5) and "to advocate for" Epic's cause "over and
over" (*id.* Ex. 3).  Forbes-Tate developed "all messaging materials" for the Coalition "[i]n
consultation with Epic."  (*Id*. Ex. 5.)  Forbes-Tate was also involved "in the direct recruitment of
Coalition membership."  (*Id.* Ex. 5.)  According to the Movants, the Coalition consists of "nearly
60 app developer members, some of whom have chosen to remain anonymous."  (Mem. at 3.)
Yet, the Coalition publicly lists 54 of those "nearly 60" members on its website.  (*See*
https://appfairness.org/members/.)

The Coalition's members have not limited their activities to just PR since the Coalition's
creation.  Rather, they directly and repeatedly inserted themselves into the *Epic* Action and the
Consumer and/or the Developer Class Actions (where they represent a large portion of the
damages claimed).  In the run up to the *Epic* trial, Coalition member Match produced documents
and, at Epic's and class plaintiffs' request, sat for a deposition; Epic relied extensively on Match
deposition designations in its proposed findings of fact and conclusions of law.  *Id.* (D.E. 777-3.)
Epic and class plaintiffs also issued document subpoenas on other Coalition members and called

Coalition member Yoga Buddhi as a witness to testify at the *Epic* trial, which Yoga Buddhi voluntarily did. *Epic Games, Inc. v. Apple Inc.*, Case No. 20-cv-05640-YGR (D.E. 454.); *see* Huttenlocher Decl. Ex. 4 at 349:5-8. While voluntarily complying with Epic's and class plaintiffs' discovery demands, the Coalition and its members have fought Apple at every turn. Levelling this skewed playing field is at the heart of Apple's effort to obtain the documents at issue.

These Coalition members and app developers have a vested commercial, financial interest in the outcome of the *Epic* Action, leading them to insert themselves in that case. That interest is only heightened for the Developer Class Actions because these developers have a substantial monetary interest in any recovery. Notably, the Coalition does not deny that it is in possession of communications between the plaintiffs in the lawsuits and Coalition members. The Coalition's executive director was very careful to say in her declaration only that she is "not aware of any instance in which the Coalition, Forbes Tate Partners, or I have communicated with, provided documents to, or otherwise coordinated efforts with the plaintiffs in either [class action] case or their counsel." (Movants' Ex. D (DiMuzio Decl.) ¶ 9.) But, she does not say that the Coalition does not have such communications in its possession because she or others were copied, blind copied or forwarded information from Coalition members (such as Epic, Yoga Buddhi, or others) communicating with named plaintiffs. Apple is entitled to understand the views of these (and other) Coalition members and any admissions they made relating to the subject matter of the antitrust litigations. Those communications cannot be funneled through the Coalition to imbue them with a First Amendment privilege.

Movants also submit affidavits from Coalition members purporting to fear retaliation by Apple but, as noted above, all of those Coalition members have publicly opposed Apple and

have suffered no retaliation whatsoever.  This is not about these entities' public statements or

activities – this is about materials relevant to a litigation in which they have participated.

Accordingly, Movants' speculation as to potential chilling effects and claims that "members and

prospective members reasonably fear that compelled disclosure of the requested materials would

open them up to retaliation from Apple" is rank speculation and belied by history.  (Mem. at 17.)

### III.   Class Certification Opposition is Due August 10

On June 1, 2021, a week after the *Epic* Action trial concluded, the putative consumer and

developer classes filed their respective motions for class certification.  *In re Apple iPhone

Antitrust Litigation,* No. 11-cv-6714-YGR (D.E. 441); *Cameron v. Apple, Inc.*, No. 19-cv-3074-

YGR (D.E. 332.)  The motions relied on testimony and documentary evidence from the *Epic*

Action and were supported by extensive expert testimony.  *Id.*  Apple's opposition is due August

10, 2021, and the materials Apple seeks from the Movants are highly relevant to both Apple's

class certification opposition as well as the merits.  *In re Apple iPhone Antitrust Litigation,* No.

11-cv-6714-YGR (D.E. 362); *Cameron v. Apple, Inc.*, No. 19-cv-3074-YGR (D.E. 232).  (*See

also* Huttenlocher Decl. ¶ 17.)

In their motion for class certification, Developer Plaintiffs "allege the same antitrust

violation and injury for every Class member – elimination of market alternatives and

overpayment of commissions to Apple – making their claims typical of the Class as a whole."

*Cameron v. Apple, Inc*., No. 19-cv-3074-YGR (D.E. 332 at 8).  In addition, Developer Plaintiffs

contend that "Rule 23(a)(4)'s adequacy requirement is met because the interests of Plaintiffs and

the proposed Class are fully aligned" and "[n]either Plaintiffs nor Interim Class Counsel have

any conflicts with the Class."  *Id.* at 9.  Developer Plaintiffs also allege that because "Epic is the

only class member . . . to have brought an individual action . . .  [t]his is a powerful indication of

class cohesion and the superiority of class treatment."  *Id.* at 24.

Apple plans to oppose class certification by arguing, among other things, that the heterogeneity of class members defeats the commonality, adequacy and predominance prongs of Federal Rule of Civil Procedure 23.  Central to the inquiry is whether there are conflicts among putative class members, including whether those class members have individualized injuries or no injuries at all such that the putative class claims and Apple's defenses are not capable of class-wide adjudication.  The documents Apple seeks from the Movants are relevant to these issues.

Specifically, there are likely to be communications between the Coalition and its members showing that there was some coordination for app developers not to bring individual suits against Apple.  In addition, communications between and among the Coalition and its members bearing on whether particular developers' injuries from Apple's policies are affected by the particular business model or monetization strategies they have chosen are relevant to the class certification inquiry.  Also, Movants admit that the Coalition has been unsuccessful in recruiting certain members, and Apple is entitled to probe this information and determine if it reflects the view that the App Store policies were beneficial to these developers, which potentially go to these issues of adequacy and/ or predominance.  These types of communications could help to defeat the class action on grounds of predominance by showing there are uninjured class members, showing that named plaintiffs are not typical, and/or that there are conflicts of interest within the purported class.

**IV.**   **History of the Subject Subpoenas**

In December 2020, Apple served subpoenas on certain Coalition members including Basecamp, Yoga Buddhi, and Match.  Apple sought, among other things, the production of documents similar to those sought by the subpoenas at issue here.  (Huttenlocher Decl. Exs. 6, 7, and 8.)  Basecamp and Match have stood on their objections to the production of Coalition

14

related documents.  (*Id.* Ex. 12.)  Apple is moving to compel production of these materials in the Northern District of Illinois (Basecamp) and in the Northern District of Texas (Match) in the coming days.  For purposes of judicial economy and avoiding inconsistent rulings, it makes sense to have these related discovery motions heard in the Northern District of California.

Although Yoga Buddhi initially objected to the production of Coalition documents, it has abruptly changed course and has recently agreed to produce newsletters sent out by the Coalition to Yoga Buddhi and other email communications.  (Huttenlocher Decl. Ex. 12.)  This is notable for two reasons.  First, the *same* counsel that represents the Coalition before this Court represents Yoga Buddhi with respect to the similar subpoena served upon it by Apple.  To the extent Yoga Buddhi and the lawyers before this Court have been asserting that Apple's requests violate Yoga Buddhi's and Movants' First Amendment privilege, the sudden reversal shows that this position was never genuine.  Second, the issuing court and the enforcing court for the Yoga Buddhi subpoena is the Northern District of California.  By producing documents in response to the Apple subpoena, Yoga Buddhi enables Movants' forum shopping by removing a connection to the issuing Court (and a clear basis for transfer).  This type of gamesmanship is a transparent attempt to avoid the deep knowledge and expertise of the Northern District of California in the hopes that this Court (a stranger to the underlying litigation) will rule in its favor based on incomplete knowledge of the underlying facts.

Apple issued subpoenas to the Movants on June 7 and June 11, 2021 seeking documents in the categories as described above.  (Movants' Exs. A, B and C.)  Apple and counsel for the Movants met and conferred on July 1, 2021 and came to impasse on the First Amendment issues. During the meet and confer, Movants did not articulate the alleged burden placed upon them by the subpoenas.  Movants have not stated whether they conducted any searches for responsive

documents, the number of potentially responsive documents, or if there are any ways that any such burden could be eased, such as with search terms.

Counsel for Apple contacted Movants' counsel on July 14, 2021 in order to confer pursuant to Local Civil Rule 7(m).  Movants would not agree to transfer this dispute to the Northern District of California nor agree to produce documents in response to the subpoenas or withdraw their motion to quash.  Movants also objected to Apple's motion to expedite.

## ARGUMENT

## I.    APPLE'S MOTION TO TRANSFER SHOULD BE GRANTED

Because of the expedited timeline, procedural posture and complexity of the underlying Consumer and Developer Class Actions, and the Northern District of California's intimate familiarity with these cases, this Court should transfer this dispute to the Northern District of California.  The burden placed on the Movants by the transfer does not outweigh the exceptional circumstances warranting transfer here.

### A.    Legal Standard for Motion to Transfer

Where, as here, the subpoena compliance and issuing courts differ, the court where subpoena compliance is required can transfer motions to quash or compel to the court that issued the subpoena "if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f); *see also In re Braden*, 344 F. Supp. 3d 83, 89 (D.D.C. 2018).  Courts weighing transfer under Rule 45(f) must ensure the "the efficient, fair and orderly progress of ongoing litigation before the issuing court" and balance this against any "interest of the nonparty in obtaining local resolution of a subpoena-related motion."  *In re Braden,* 344 F. Supp. 3d at 90 (cleaned up); *see also In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 375 (D.D.C. 2017).  "[C]ourts have found exceptional circumstances warranting transferring subpoena-related motions . . . when transferring the matter is in the interests of judicial economy and avoiding inconsistent results."

*Wultz v. Bank of China, Ltd*., 304 F.R.D. 38, 46 (D.D.C. 2014) (citation and internal quotation marks omitted).

Courts in this jurisdiction have identified several factors that support a finding of exceptional circumstances, including the "complexity [of the underlying matter], [its] procedural posture, [the] duration of pendency [of the underlying case], and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *In re Disposable Contact Lens Antitrust Litig*., 306 F. Supp. 3d at 376 (internal quotation marks omitted) (quoting *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig*., 113 F. Supp. 3d 286, 288 (D.D.C. 2015). "At bottom, the established considerations appear to relate to three overarching questions: (1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and (3) whether, based on various considerations, the issuing court is in the best position to rule on the motion to compel." *Id.*

B.   **Transfer to the Northern District of California Is Warranted Given the Procedural Posture and Pendency of the Underlying Litigation in the Northern District of California**

Beginning in August of 2019, nearly two years ago, Judge Gonzalez Rogers entered comprehensive case management orders that have defined the timeline for discovery and class certification matters in the Consumer and Developer Class Actions. *See, e.g., Cameron v. Apple, Inc.*, No. 19-cv-3074-YGR (D.E. 84); *In re Apple iPhone Antitrust Litigation,* No. 11-cv-6714-YGR (D.E. 199).  Most pressingly, Apple's opposition to the motions for class certification filed in the Consumer and Developer Class Actions is due on August 10, 2021.  Responsive documents to the subpoenas at issue are relevant to Apple's opposition and, more broadly, to the merits of the underlying antitrust litigation.  (*See* Huttenlocher Decl. ¶ 17.)

17

As discussed above, the Consumer and Developer Class Actions have been pending since 2011 and 2019, respectively, and in that time, Judge Gonzalez Rogers and Magistrate Judge Hixson has become very familiar with the underlying facts and related discovery issues, including through the resolution of more than a dozen discovery disputes, including those that have implicated third-party discovery. *See, e.g., Cameron v. Apple, Inc.*, No. 19-cv-3074-YGR (D.E. 64, 98); *In re Apple iPhone Antitrust Litigation,* No. 11-cv-6714-YGR (D.E. 199). "Should this Court decline to transfer the subpoena disputes, the time it must take to familiarize itself with the underlying action would risk disrupting" the Northern District of California's administration of class certification and discovery. *In re Braden*, 344 F. Supp. 3d at 90; *see also Duck v. SEC.*, 317 F.R.D. 321, 325 (D.D.C. 2016) (noting that transfer "is appropriate where [it] would avoid interference with a time-sensitive discovery schedule issued in the underlying action" (citing *Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 43–44 (D.D.C. 2015)); *Google, Inc. v. Digital Citizens Alliance*, No. 15-0707, 2015 WL 4930979, at *3 (D.D.C. July 31, 2015) (determining that transfer was appropriate where "not transferring the subpoena-related motions carrie[d] with it the potential of interfering with the discovery timeline of the underlying litigation").

In addition, Magistrate Judge Hixson has established a streamlined process for resolving discovery disputes that requires relatively little briefing, made possible by his understanding of the issues in the underlying litigation. *In re Braden*, 344 F. Supp. 3d at 92 (granting motion to transfer, in part, because the issuing court had established a "streamlined process" for resolving discovery disputes). Movants acknowledge that Apple attempted to make use of this streamlined process "when [c]ounsel for Apple sent counsel for the Coalition a draft of its section of a proposed joint letter brief to be submitted to the magistrate judge handling the App Developer

and App Purchaser Cases in the Northern District of California." (Mem. at 7.) Rather than engage in that process, Movants raced to this Court, foregoing any considerations of judicial economy or having the best-positioned court decide the issues. Fed. R. Civ. P. 45(f); *Wultz*, 304 F.R.D. at 46 (D.D.C. 2014) (conducing that "exceptional circumstances warranting transferring subpoena-related motions . . . when transferring the matter is in the interests of judicial economy"). Instead, Movants engaged in improper forum shopping and made a tactical decision to produce documents by one Coalition member, Yoga Buddhi, but assert a blanket First Amendment privilege on behalf of the Coalition in this Court to avoid adjudication of this issue before Magistrate Judge Hixson.

Further, absent a transfer, Movants' gamesmanship to rush to this Court for resolution may result in inconsistent rulings. In addition to the instant dispute, Basecamp and Match – two other Coalition members – are seeking to have the substantially same issues decided in the Northern District of Illinois (Basecamp) and in the Northern District of Texas (Match), respectively. Litigating these issues in three separate courts – all of which are complete strangers to the underlying litigation – creates a real and substantial risk of inconsistent rulings concerning the applicability of the First Amendment privilege and relevance of the materials requested by the subpoenas. Accordingly, it is not just warranted but necessary for the Court to transfer the instant dispute to the Northern District of California. *Wultz*, 304 F.R.D. at 46 (transferring subpoena-related motions is warranted to avoid "inconsistent results").

C.    **Transfer is Warranted Given the History and Complexity of the Underlying Litigations**

In addition, the Court should transfer this dispute for the independent reason that the Northern District of California is, without doubt, better positioned to adjudicate the merits of the instant dispute given the history and complexity of the underlying litigations. This is especially

19

true where resolution of the dispute is necessary sufficiently in advance of the August 10

deadline for Apple's opposition to class certification, and where Movants' Motion to Quash and

Apple's Motion to Compel will require this Court to make detailed relevance determinations.

There is no question that the Northern District of California, which has been steeped in

the underlying litigations for over 10 years (and intensively over the past two years), is more

familiar with Movants' and Apple's arguments concerning relevance than this Court (a stranger

to the underlying litigations). "Transfer is necessary to allow the court that is most familiar with

Plaintiffs' core arguments . . . to evaluate the importance of the documents sought in the

subpoenas at issue to those core arguments." *In re Braden*, 344 F. Supp. 3d at 93; *see also*

*Lipman*, 284 F. Supp. 3d at 13 (holding that "[t]he centrality of the relevance assessment weighs

in favor of transfer because determining whether information is relevant requires nuanced legal

analysis based on a full understanding of the [u]nderlying [a]ction" (citation and internal

quotation marks omitted)); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at

381–82 (holding that a need to assess the relevance of the documents at issue in the subpoena

dispute weighed in favor of transfer); *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 47 (D.D.C.

2016) (in transferring a discovery dispute, noting that the transferee Judge was "knee-deep in the

nuances of the underlying litigation," and thus was clearly "in a much better position than this

[c]ourt to evaluate relevance"); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C.

2014) ("[T]he relevance argument advanced [by the subpoenaed nonparty] emphasizes the need

for the court where the underlying matter lies to decide the matter." (citation and internal

quotation marks omitted)).

In addition, where, as here, a First Amendment privilege is asserted, the Court must

assess "whether the information [sought] goes to the 'heart of the lawsuit." *Wyoming v. U.S.*

*Dep't of Agric.*, 208 F.R.D. 449, 455 (D.D.C. 2002).  This is a nuanced analysis better suited to the court most familiar with the underlying litigations.  *See id.*  "Transfer is also necessary to allow the court that issued the protective order to determine the impact of that order on Respondents' First Amendment privilege arguments."  *In re Braden*, 344 F. Supp. 3d at 93; *see also In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 382 (finding it relevant that a "point of contention between the parties here is whether the protective order that has been issued in the underlying [action] . . . is sufficient to mitigate the privacy concerns Respondent has asserted in his challenge to the subpoena").

Tellingly, Movants did not even alert this Court to the existence of the protective order entered in the underlying litigations.  The Northern District of California is best-suited to assess the impact of that protective order on Movants' First Amendment privilege arguments and transfer is warranted.

## II.     IN THE ALTERNATIVE, MOVANTS' MOTION TO QUASH SHOULD BE DENIED AND APPLE'S MOTION TO COMPEL SHOULD BE GRANTED

For the reasons outlined in Section I above, this Court can and should transfer the Movants' Motion to Quash and Apple's Motion to Compel to the Northern District of California. However, to the extent this Court denies Apple's Motion to Transfer, this Court should deny Movants' Motion to Quash and grant Apple's Motion to Compel.

### A.     Legal Standard for Motion to Compel

A party may move to compel discovery provided that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  The standard for relevance is broad at the discovery stage.  *U.S. ex rel Pogue v. Diabetes Treatment Ctrs. of Am.*, 235 F.R.D. 521, 525 (D.D.C. 2006).  "The Federal Rules of Civil Procedure provide for liberal discovery. . . . 'the

Rules often allow extensive intrusion into the affairs of both litigants **and third parties**.'"  *FTC v. Sysco Corp.*, 83 F. Supp. 3d 271, 274 (D.D.C. 2015) (emphasis added) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30, 34 (1984)).

Movants claim that the discovery Apple seeks is "simply a fishing expedition" and "[a] litigant may not 'go on a 'fishing expedition' with the mere 'hope' that it will obtain relevant information." (Mem. at 8.)  This argument rings hollow.  Apple does not merely "hope" it will obtain relevant information.  Movants have not denied that the materials that Apple seeks exist – indeed Yoga Buddhi has agreed to produce responsive materials – and, as discussed in detail below, these materials are relevant to merits issues and class certification in the underlying litigations.  Apple counsel has requested discovery from Movants based on a good faith belief that relevant and important information exists.  *See Bd. of Governors of Fed. Rsrv. Sys. v. Interfinancial Servs., Ltd.,* 104 F. Supp. 2d 39, 42 (D.D.C. 2000) ("[T]his court is satisfied that the Board tailored its document request narrowly to conform to the allegations, and that the subpoena *duces tecum* approved by Judge Shipe does not constitute a 'fishing expedition.'").

## B.       The First Amendment Associational Privilege Does Not Apply

### 1.       *Legal Standard for First Amendment Privilege*

Movants have asserted a blanket objection to *all documents* sought by the subpoenas as protected from disclosure by the First Amendment privilege.  Apple is not seeking discovery from Movants because of independent advocacy.  Instead, Apple is seeking discovery because Movants and Coalition members inserted themselves into these litigations and were used as a sword in the *Epic* Action.  Movants cannot now shield themselves from targeted discovery based on a blanket – and inapplicable – First Amendment privilege.

As an initial matter, the Coalition is not a political organization of like-minded app developers engaged in protected speech.  Rather, it is the public-facing litigation arm of Epic and

22

its fellow large, powerful developers, created for the express purpose of opposing Apple in court. Despite Movants' attempts to cast the Coalition as a political group that "engage[s] in various associational and advocacy activities," the Coalition is, at most, a trade association organized for the purpose of advancing through the litigation process the commercial, pecuniary interests of its members.  (Mem. at 4.)

Accordingly, Movants' reliance on *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) is inapposite and its communications are not protected by the First Amendment privilege. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (holding that *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) was limited to political – not commercial – speech); *see also Tesla Motors, Inc. v. Johnson,* No. 1:16-CV-1158, 2017 WL 11500988, at *2 (W.D. Mich. Dec. 11, 2017) (holding that "[t]he Magistrate Judge appropriately distinguished *Perry* and the highly volatile nature of the interests and issues in that case from those here, which are essentially commercial interests").  Indeed, even the Coalition's communications with government agencies about the App Store and its policies are not protected.[4]

However, even if some of Movants' communications were protected by the First Amendment privilege, the privilege would require a careful balancing by the Court of the relative interests of the parties in the requested documents.  *AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003); *see also Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981), *cert. granted, judgment vacated by* 458 U.S. 1118 (1982).  To determine if a First Amendment privilege exists, courts apply a two-pronged balancing test.  First, the party seeking to assert the privilege, here, the Movants, "must demonstrate . . . a 'prima facie showing of arguable first

___
[4] To the contrary, FOIA establishes the public's right to such documents without need for a subpoena or a showing of relevance.  *North v. Walsh*, 881 F.2d 1088, 1095 (D.C. Cir. 1989) ("[N]o showing of relevance or need is required to obtain documents under FOIA.").

amendment infringement.'" *Perry*, 591 F.3d at 1160 (quoting *Brock v. Local 375, Plumbers Int'l. Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988)).  To establish this prima facie showing, the party asserting the privilege bears the burden of showing that compliance with the discovery requests will result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of the members' associational rights." *Perry*, 591 F.3d at 1160 (internal quotations and marks omitted); *see also Black Panther*, 661 F.2d at 1268 (party asserting privilege must show "there is some probability that disclosure will lead to reprisal or harassment").

Only if Movants can clear this hurdle – which they cannot – will the burden shift to Apple to "demonstrate that the information sought through the [discovery] is rationally related to a compelling . . . interest . . . [and] the least restrictive means of obtaining the desired information." *Perry*, 591 F.3d at 1161 (internal quotations omitted); *see also Black Panther Party*, 661 F.2d at 1266 ("[T]he plaintiff's First Amendment claim should be measured against the defendant's need for the information sought.").  This ensures that any First Amendment privilege is not absolute, and it may be overcome by a showing of need.  *AFL-CIO*, 333 F.3d at 176 ("[C]ourts therefore balance the burdens imposed on individuals and associations against the significance of the . . . interest in disclosure and consider the degree to which the [requesting party] has tailored the disclosure requirement to serve its interests.").

Courts look to several factors to balance the parties' countervailing interests, "including (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *The Ohio Org. Collaborative v. Husted,* No. 2:15-CV-01802, 2015 WL 7008530 at *3 (S.D. Ohio Nov. 12, 2015) (internal citations omitted); *see also Perry*, 591 F.3d at 1161.

2.      *Movants Cannot Establish a Prima Facie Showing of any First Amendment Harm*

Here, Movants have failed to establish a prima facie showing of any First Amendment harm.  Speculation aside, Movants cannot establish that there is any real threat of retaliation or chilling of the members' associational rights.

First, production of documents to Apple will not reveal opposition to Apple that was not already public.  The Coalition announces its members on its website – distinguishing this case from *Perry* and *NAACP v. Alabama*, 357 U.S. 449, 462 (1958), which sought primarily to protect membership lists from disclosure.  *Cf. Americans for Prosperity Foundation v. Cal. AG*, No. 19-251, S. Ct. ___ (July 1, 2021) (similar).  Indeed, the composition of the Coalition's membership is part of Epic's PR strategy and keeping the identity of its members secret would defeat the point.  As the Coalition admits, the Coalition consists of "nearly 60 app developer members, some of whom have chosen to remain anonymous."  (Mem. at 3)  The Coalition publicly lists *fifty-four* of those "nearly 60" members on its website.[5]  (*See* https://appfairness.org/members/.)

Second, the Protective Order allows Movants to produce documents for "Attorneys' Eyes Only," such that no Apple decision-maker would see them, let alone use them.  Courts have determined that "[a] protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect and could weigh against a showing of infringement." *Perry*, 591 F.3d at 1160 n.6 & 1164; *In re Braden*, 344 F. Supp. 3d at 93 (holding that a "protective order filed in the underlying case . . . may mitigate the chilling effect and could weigh against a showing of [First Amendment] infringement." (internal citations omitted)); *see*

---

[5] Movants have the option to note the identities of those six or fewer anonymous Coalition members and mark those documents as highly confidential under the terms of the protective order entered in the underlying litigations or they can redact those names and, if disclosure of those names is required for some reason, the parties can meet and confer on that issue.

25

*also Klayman v. Judicial Watch, Inc.*, No. 06-cv-670, 2008 WL 11394177, at *4 (D.D.C. Jan. 8, 2008) (concluding if documents "are produced in response to the subpoenas, the 'chilling effect' about which [party] is concerned will be minimized by the protective order that is currently in effect"). At no point have Movants explained why this protective order is insufficient to guard Movants' alleged confidential materials from disclosure. Indeed, Movants do not mention the Protective Order at all.

Third, Apple's uniform application of its guidelines means that there are no practical consequences to an app developer joining the Coalition with respect to its business relationship with Apple or the App Store. (Huttenlocher Decl. Ex. 4 at 2832:16-24 (Schiller (discussing goal to "provide developers a consistent equally fair set of rules across all developers."); and at 946:17-947:5 (Fischer ("The App Store review guidelines apply equally to all developers")).) Each of the Coalition members currently have apps available for download on the App Store, which are subject to the same policies applied to all developers.

Fourth, DiMuzio's claims as to "the chilling effect that compelled disclosure of these documents would have" are mere speculation and divorced from reality. (Mem. at 15.) *See Flynn v. Square One Distribution, Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *1, 3 (M.D. Fla. May 25, 2016) (holding that the chairman's affidavit "which is the only evidence submitted in support of his motion, is not sufficient to satisfy his burden" in part because "his opinion about what other members will and will not do is speculation and conjecture. It is not based on historical facts, personal observations, personal experience, or first-hand knowledge."). The central claim of Movants is that they fear that Apple will remove their apps from the App Store or reject their app updates due to their internal Coalition communications. (*See* Movants' Exs. E (Hansson Decl.) ¶ 11), F (Daru Decl.) ¶ 8.) However, no declarant alleges that their apps

are not on the App Store or have been removed as a result of *publicly joining* the Coalition. Basecamp and Tile have both testified against Apple in Congressional hearings and, yet, they do not allege any acts of retaliation by Apple as a result.  (*See* https://www.judiciary.senate.gov/imo/media/doc/4.21%20Jared%20Sine%20Submitted%20Testimony%20Senate%20Jud%20Antitrust%20Sbcmte.pdf.)

Even Epic – which started the Coalition as part of its lawsuit against Apple – was told that it could resume putting *Fortnite* on the App Store if it complied with Apple's Developer Program License Agreement – which Epic stipulated that it breached.  (Huttenlocher Decl. Ex. 4 at 58:6-9 (Apple Opening ("Now, even though Epic had breached, Apple told Epic that *Fortnite* was welcome back into the App Store, as long as Epic would comply with the guidelines that apply equally to all developers.").)  There is just no plausible basis for Movants' purported fear of retaliation.

Fifth, the remaining declarations submitted by the Movants do not provide any objective and articulable facts concerning retaliation either.  Rather, Movants cite to hearsay and speculation as to the broad "concerns" of actual or prospective members.  (Movants Ex. D (DiMuzio Decl.) ¶¶ 14, 16 (discussing alleged chilling effects based on hearsay "conversations with Coalition members" and unsubstantiated "threats" against Spotify); Movants Ex. E (Hansson Decl.) ¶ 14 (relying on hearsay based on having "spoken with the CEOs of several other app companies").  That is insufficient to carry the Movants' burden and are simply subjective fears not based in actual fact.  *Nat'l Org. for Marriage v. McKee,* 723 F. Supp. 2d 236, 242 (D. Me. 2010) (concluding that "[t]he record must contain objective and articulable facts, which go beyond broad allegations or subjective fears."); *United States v. Comley*, 890 F.2d 539, 543-44 (1st Cir.1989) ("Comley has made only general allegations concerning the

harassment or harm that will result to his associates if their identities indeed are revealed by the tape recordings.").

While the Coalition claims that it requires members to sign a "membership contribution agreement" that "*requires* all members to maintain the confidentiality of Coalition communications," the Coalition has not produced a copy of that agreement and is apparently taking no action against Yoga Buddhi for agreeing to produce Coalition communications to Apple.  (Movants Ex. D (DiMuzio Decl.) ¶ 13.)  Confidentiality of these internal communications cannot be so important to the Coalition as its counsel has agreed to produce Coalition communications in representing Yoga Buddhi.  Movants simply cannot meet their *prima facie* burden of any First Amendment harm.

Sixth, the disclosure Apple seeks is not public disclosure but instead private disclosure for a limited use.  *Tesla Motors, Inc*, 2017 WL 11500988, at *2 ("Here, it is not a question of the government seeking to obtain and publicize a list of names, but of a private litigant seeking to view a list for the purpose of deposing individuals who may have relevant information about a pending case. ***Thus, there is not only a strong interest to justify 'disclosure,' but the disclosure itself, under the court's protective orders, is not to be public disclosure, but private disclosure for a limited use***." (emphasis added)).  Accordingly, *AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003) which involved the public disclosure of information that was already produced pursuant to a document request is inapposite.

Seventh, Movants claim that "lobbying is protected under the First Amendment" is unsupported.  (Mem. at 13.)  Movants cite to *Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2013 WL 12098752, at *1 (D. Ariz. Dec. 11, 2013) which stands for the *exact opposite proposition*. There, the court considered nonprofit nonparties' objections to producing communications

between the movants and Arizona legislators and their staff on First Amendment grounds. *Id*. at

*2. On the explicit point of lobbying communications, the court distinguished *Perry*, because

"*Perry* and its progeny have all dealt with the disclosure of either the identity of association

members or internal communications –not communications with third parties, let alone public

officials." *Id*. at *3.[6] Moreover, the materials that Apple seeks are only non-FOIA-exempt

communications that the Movants have had concerning the App Store with any legislators or

(foreign or domestic) regulators. As such "FOIA mandates disclosure of [these] records"

(regardless of relevance) pursuant to the "basic policy that disclosure, not secrecy, is the

dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532

U.S. 1, 7 (2001).[7]

      **C.**      **Apple's Need for These Documents Outweighs Movants' Alleged First Amendment Privilege**

      Even if the Court finds that Movants have met their burden of showing that their First

Amendment interests will be harmed by the protected disclosure of this information – which they

have not – the materials are highly relevant to Apple's class certification opposition and merits

case. (*See* Huttenlocher Decl. ¶ 17.) As a result, Apple's substantial need for these materials

overcomes any First Amendment privilege.

      First, communications about the App Store or App Store litigation are relevant to, among

other things, the harm or benefits the developers perceive from the App Store and the policies at

issue in the litigations, the positive experiences that developers have had with Apple's App

Review process (both through machine learning and human review), the importance to them of

---

[6] For the avoidance of doubt, Apple is seeking internal communications among the app developers because, as detailed above, these communications are not protected from disclosure by the First Amendment.

[7] That said, to the extent that there are documents that are FOIA exempt, Movants should put those documents on a privilege log and actually make a showing that such specific documents are exempt from disclosure. Broad statements that documents are FOIA exempt is insufficient.

Apple's security and privacy features for app development and customer acquisition, and the varying monetization strategies that developers are able to deploy.  Frankly, it is obvious that communications between and among putative app developers about the very policies being challenged by a putative class representative are relevant to the underlying merits of the class action and Apple's defenses.

Second, the requested evidence is also highly relevant to the pending motion for class certification.  Specifically, Apple seeks communications with other developers concerning the App Store, among other things.  Such communications are relevant to class certification, including whether there are individualized differences among developers that defeat predominance and issues concerning injury.  For example, the concerns, operations, and incentives of the developers who are members of the Coalition may be different than those of other purported class members.  In addition, given that the putative class representatives seek to represent *all* iOS app developers, there are bound to be app developers that will be injured by the changes that the putative class seeks, yet swept into the proposed class along with their direct competitors.  These types of conflicts among putative class members are squarely relevant to a Rule 23 inquiry, *see Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 791 (9th Cir. 2021) (citations omitted) ("When considering if predominance has been met, a key factual determination courts must make is whether the plaintiffs' statistical evidence sweeps in uninjured class members."); *Glictronix Corp. v. AT&T*, 603 F. Supp. 552, 585-86 (D.N.J. 1984) (Where the proposed class members are competitors, "the need to assess damages by lost sales or profits places class members in conflict with one another, and makes it impossible for the representative plaintiff to adequately represent the other class members."), and Movants' communications bearing on them are certainly discoverable.

Third, the discovery sought by Apple is relevant to the issue of bias. *Raygoza v. Holland*, No. 16-CV-02978-EMC, 2018 WL 6002325, at *21 (N.D. Cal. Nov. 15, 2018) ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." (*citing United States v. Abel*, 469 U.S. 45, 52 (1984)); *U.S. v. Anderson*, 881 F.2d 1128, 1136 (D.C. Cir. 1989) ("Bias of a witness is always relevant."). Here, it is likely that one or more of the Movants or the Coalition members will be called as a witness by plaintiffs at trial should a class be certified. They were already called in the Epic case. Coalition member Yoga Buddhi testified at the Epic trial and Coalition member Match was deposed and that deposition transcript was relied upon heavily by Epic at trial. The Movants are not merely bystanders to these underlying litigations; Apple is entitled to these materials that squarely go toward this issue of bias. *Tesla Motors, Inc.,* 2017 WL 11500988, at *2 ("[D]espite their status as nonparties, the Dealers' are not merely 'bystanders' in this case . . . . [and thus] the communications sought in discovery are directly and highly relevant to Tesla's claims.")

Apple cannot wait to see if Coalition members will be called at trial and then request documents because it will be too late. In fact, during the *Epic v. Apple* trial, Facebook and Microsoft were listed on Epic's witness list after discovery had closed and Apple sought production of documents from Facebook to prepare for trial. Apple was denied that discovery on the basis that it was untimely – not that it was substantively inappropriate. The Coalition (or its members) should not be able to claim at this point that they will not be called as witnesses at trial as a way to deflect document productions now and then potentially find their way on to a trial

witness list later.  *See Epic Games, Inc. v. Apple Inc.*, Case No. 20-cv-05640-YGR (TSH), Dkt.

No. 399 (Discovery Order Apr. 6, 2021).

Fourth, Judge Gonzalez Rogers made clear during the *Epic v. Apple* trial that the level of

coordination between the Coalition and the plaintiff (Epic) was relevant.  Judge Gonzalez Rogers

asked Epic CEO Tim Sweeney whether he had consulted with counsel for the developer class

action prior to filing suit against Apple.  (Huttenlocher Decl. Ex. 4 at 155:13-25 (Sweeney ("The

Court: Mr. Sweeney, at this time before you did this, did you contact the lawyers who had

already sued Apple on this same topic, the lawyers who were representing a class of developers?

Did you contact them?  The Witness: I don't know if that -- if counsel contacted them or not. I

didn't -- I wasn't involved in any contact.").)  The Court's question went directly to whether

there was some grander level of coordination between litigants suing Apple, the very discovery

that Apple seeks now from Movants.  Although Mr. Sweeney had no personal knowledge, he did

not foreclose the possibility that such communications took place; and, if they did, Apple is

clearly entitled to the production of these communications.

For their part, Movants misleadingly state that "a party is generally 'not permitted to seek

discovery from absent class members.'"  (Mem. at 21 n.7.)  To the contrary, discovery of absent

class members is permitted if "the class member has inserted herself into the litigation."  As

discussed above, Movants have consistently and repeatedly inserted themselves in the underlying

litigations.  "There is no blanket rule barring discovery with respect to absent class members."

*Mas v. Cumulweus Media Inc.*, C 10-1396-EMC, 2010 WL 4916402, at *3-4 (N.D. Cal. Nov. 22,

2010); *see also Staley v. Gilead Scis., Inc.*, Case No. 19-cv-02573-EMC(LB), 3 (N.D. Cal. Aug.

28, 2020) (granting discovery for absent class members).  Discovery is appropriate "where the

information sought is relevant, not readily obtainable from the representative parties or other

sources, and the request is not unduly burdensome and made in good faith." *Id.* at *3. Moreover, "[c]lass certification is a pivotal stage in civil litigation" and "a defendant should not be unfairly prejudiced by being unable to develop its case even though facts of the case may reside with the absent class members." *Fishon v. Peloton Interactive, Inc*., 336 F.R.D. 67, 70 (S.D.N.Y. 2020) (internal citations omitted).

### D.   Movants' Arguments Concerning Undue Burden Fail.

Movants claim that Apple's requests are "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." (Mem. at 23.)  Movants' burden argument is disingenuous.

Movants do not assert that they have done any search to identify relevant documents nor do they provide *any* evidence or details concerning the burden.  *Crownover v. Crownover*, No. 2:15-CV-132-AM-CW, 2017 WL 10575859, at *5 (W.D. Tex. July 12, 2017) ("There is no evidence of any undue burden.  Counsel, for example, has not presented any evidence of how much it costs to get the records, if anything.")  Instead, Movants assert a blanket privilege objection to *the entire subpoena*.  In so doing, Movants have refused to discuss with Apple ways to ease any alleged burden and, accordingly, Movants' burden arguments must fail.

## III.   APPLE'S MOTION TO EXPEDITE SHOULD ALSO BE GRANTED

Finally, Apple's class certification motion due on August 10, 2021.  Given that schedule and the relevance of the materials sought from Movants to Apple's class certification opposition, the Court should grant Apple's Motion to Expedite.  "District courts enjoy broad discretion when deciding case management and scheduling matters." *See McGehee v. U.S. Dep't of Justice*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019).  Moreover, it is well-settled that courts "shall expedite the consideration of any action . . . if good cause therefor is shown."  28 U.S. Code § 1657.

## CONCLUSION

For the reasons stated herein, Apple respectfully requests that the Court grant its Cross-Motions to Expedite and Transfer or, in the alternative, deny Movants' Motion to Quash and grant Apple's Cross-Motion to Compel.

Dated: July 20, 2021

**MCDERMOTT WILL & EMERY LLP**

By: */s/ Paul M. Thompson*_____
Paul M. Thompson (D.C. Bar No. 6943760)
500 N. Capital Street NW
Washington D.C. 20001
Tel:  202-756-8000
Fax:  202-756-8087
pthompson@mwe.com

John J. Calandra (motion for
admission *pro hac vice* pending)
Nicole Castle (motion for
admission *pro hac vice* pending)
Michael R. Huttenlocher (motion for
admission *pro hac vice* pending)
340 Madison Avenue
New York, New York 10173
Tel:  212-547-5400
Fax:  212-547-5444
jcalandra@mwe.com
ncastle@mwe.com
mhuttenlocher@mwe.com

*Attorneys for Apple Inc.*