# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE COALITION FOR APP FAIRNESS; FORBES TATE PARTNERS LLC; AND MEGHAN DIMUZIO,<br><br>    Non-Party Movants,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | Misc. Case No. 1:21-mc-00098-TNM<br><br>Judge Trevor N. McFadden<br><br>Underlying Litigation:<br><br>*Cameron v. Apple, Inc.*,<br> No. 4:19-cv-3074<br>*In re Apple iPhone Antitrust Litigation*,<br> No. 4:11-cv-6714<br><br>U.S. District Court for the Northern District of California |

## MOVANTS' REPLY IN SUPPORT OF MOTION TO QUASH AND RESPONSE TO APPLE'S MOTIONS TO TRANSFER AND COMPEL

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 4

I.   "EXCEPTIONAL CIRCUMSTANCES" DO NOT WARRANT TRANSFER ................. 4

    A.   Movants Properly Moved to Quash in this Court ......................................... 4

    B.   The Meaning of "Exceptional Circumstances" ............................................ 5

    C.   Exceptional Circumstances Do Not Exist Here ........................................... 6

II.   THE FIRST AMENDMENT PRIVILEGE APPLIES ..................................................... 10

    A.   The Coalition is an Advocacy Organization Engaged in Activities
        Protected by the First Amendment ............................................................. 10

    B.   Movants Have Made A *Prima Facie* Showing Of First Amendment
        Infringement ............................................................................................... 14

III.   THE MATERIALS REQUESTED BY THE SUBPOENAS ARE NEITHER
      RELEVANT NOR "CRUCIAL" TO THE UNDERLYING LITIGATION ..................... 19

    A.   Apple's Strained Relevancy Arguments Do Not Support the Bulk of its
        Document Requests .................................................................................... 19

    B.   Any Subjective Opinions Contained in App Developer Communications
        Are Not Relevant To the Underlying Litigation ......................................... 21

    C.   App Developer Communications Are Not Relevant to Class Certification
        Issues ......................................................................................................... 22

    D.   Unsupported Speculation That Movants Might Appear as Witnesses Does
        Not Support Apple's Discovery .................................................................. 23

    E.   Discovery Into Plaintiff "Coordination" Is Irrelevant. .............................. 24

IV.   THE DOCUMENT REQUESTS ARE DISPROPORTIONAL TO THE NEEDS
      OF THE CASE AND VIOLATE ORDINARY DISCOVERY STANDARDS ................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*All. of Auto. Mfrs., Inc. v. Jones,*
　No. 08-cv-555, 2013 WL 4838764 (N.D. Fla. Sept. 11, 2013) ...........................................13

*Ams. for Prosperity Found. v. Bonta,*
　141 S. Ct. 2373 (2021) ......................................................................................................13, 15

*Ass'n of Equip. Mfrs. v. Burgum,*
　427 F. Supp. 3d 1082 (D.N.D. 2019) ....................................................................................13

*\*Black Panther Party v. Smith,*
　661 F.2d 1243 (D.C. Cir. 1981) ........................................................................................2, 14

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
　429 U.S. 477 (1977) ...............................................................................................................21

*Castro v. Sanofi Pasteur Inc.,*
　134 F. Supp. 3d 820 (D.N.J. 2015) ........................................................................................22

*CMB Expert, LLC v. Atteberry,*
　No. 14-mc-51, 2014 WL 2197840 (N.D. Tex. May 27, 2014)................................................6

*Flynn v. FCA US LLC,*
　216 F. Supp. 3d 44 (D.D.C. 2016) ..........................................................................................9

*Hale v. State Farm Mut. Auto. Ins. Co.,*
　No. 12-CV-660, 2014 WL 6854416 (S.D. Ill. Dec. 5, 2014) ...............................................15

*Hood v. City of Chicago,*
　No. 19-MC-00123, 2019 WL 5295169 (D.D.C. Oct. 18, 2019)..............................................8

*In re Apple iPod iTunes Antitrust Litig.,*
　No. C 05-00037, 2008 WL 5574487 (N.D. Cal. Dec. 22, 2008) ...........................................22

*In re Braden,*
　344 F. Supp. 3d 83 (D.D.C. 2018)......................................................................................4, 9

*In re Disposable Contact Lens Antitrust Litig.,*
　306 F. Supp. 3d, 372 (D.D.C. 2017) .......................................................................................9

*In re Motor Fuel Temperature Sales Pracs. Litig.,*
　641 F.3d 470 (10th Cir. 2011) ...............................................................................................13

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
　No. C 09-1967, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013)...............................................22

*In re Nonparty Subpoenas Duces Tecum,*
　327 F.R.D. 23 (D.D.C. 2018)...................................................................................................7

*In re Packaged Seafood Prods. Antitrust Litig.,*
　332 F.R.D. 308 (S.D. Cal. 2019) ...........................................................................................23

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Subpoena on Sorrento Therapeutics, Inc.*,
  No. 17-cv-2442, 2018 WL 788899 (S.D. Cal. Feb. 8, 2018) ................................6, 8

*Isola USA Corp. v. Taiwan Union Tech. Corp.*,
  No. 15-MC-64003, 2015 WL 5934760 (D. Mass. June 18, 2015) ......................6, 10

*Lipman v. Antoon*,
  284 F. Supp. 3d 8 (D.D.C. 2018) ...........................................................................9

*MetroNet Servs. Corp. v. Qwest Corp.*,
  383 F.3d 1124 (9th Cir. 2004) ...............................................................................21

*NAACP v. Alabama*,
  357 U.S. 449 (1958)................................................................................................13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014).................................................................................................5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  993 F.3d 774 (9th Cir. 2021) .................................................................................23

*\*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) ..................................................................... *passim*

*Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*,
  No. 16-MC-80122, 2016 WL 8542561 (N.D. Cal. Aug. 3, 2016)...........................6

*Phrasavang v. Deutsche Bank*,
  656 F. Supp. 2d 196 (D.D.C. 2009) ......................................................................25

*\*Pulte Home Corp. v. Montgomery Cnty.*,
  No. GJH-14-3955, 2017 WL 1104670 (D. Md. Mar. 24, 2017)..................... *passim*

*Ramirez v. Ghilotti Bros. Inc.*,
  941 F. Supp. 2d 1197 (N.D. Cal. 2013) ................................................................25

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984)................................................................................................13

*SEC vs. Treadway*,
  438 F. Supp. 2d 218 (S.D.N.Y. 2006)....................................................................24

*Sexual Minorities of Uganda v. Lively*,
  No. 12-cv-30051, 2015 WL 4750931 (D. Mass. Aug. 10, 2015) ...........................15

*Sol v. Whiting*,
  No. 10-cv-01061, 2013 WL 12098752 (D. Ariz. Dec. 11, 2013) ...........................18

*Tesla Motors, Inc. v. Johnson*,
  No. 16-cv-1158, 2017 WL 11500988 (W.D. Mich. Dec. 11, 2017)........................20

iii

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Tree of Life Christian Schs. v. City of Upper Arlington*,
No. 11-CV-00009, 2012 WL 831918 (S.D. Ohio Mar. 12, 2012)..........................15

*United States v. United Foods, Inc.*,
533 U.S. 405 (2001)..................................................................................................13

*United States v. Weiss*,
930 F.2d 185 (2d Cir. 1991)......................................................................................24

*Woods ex rel. U.S. v. SouthernCare, Inc.*,
303 F.R.D. 405 (N.D. Ala. 2014)....................................................................6, 8, 10

*XY, LLC v. Trans Ova Genetics, L.C.*,
307 F.R.D. 10 (D.D.C. 2014)......................................................................................9

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
594 F.3d 1087 (9th Cir. 2010) ..................................................................................22

**STATUTES**

5 U.S.C. § 552..................................................................................................................19

**OTHER AUTHORITIES**

*Antitrust Applied: Examining Competition in App Stores: Before the Subcomm.
on Competition Pol'y, Antitrust, & Consumer Rights of the S. Comm. on
the Judiciary* (Apr. 21, 2021)..............................................................................12, 16

Emily Birnbaum, *Meet the app developers battling Apple and Google*,
Politico (Apr. 20, 2021) .............................................................................................10

Fed. R. Civ. P. 26...................................................................................................19, 25

Fed. R. Civ. P. 45..................................................................................................4, 5, 6, 10

Sean Hollister, *Apple made ProtonMail add in-app purchases, even though it had
been free for years*, The Verge (Oct. 8, 2020) .........................................................17

Howard Fischer Capitol Media Services, *Arizona lawmakers step into battle
between app developers, tech giants*, Tucson.com (Feb 23, 2021) ..........................12

McCormick on Evidence § 40 (3d ed. 1984)..................................................................24

Leah Nylen, *Apple, Google app store fights move to the states*,
Politico (Mar. 3, 2021).............................................................................................12

Malcolm Owen, *Australia antitrust agency examining Apple's App Store policies*,
appleinsider (Sept. 8, 2020) .....................................................................................13

Press Release, European Commission, *Antitrust: Commission opens
investigations into Apple's App Store rules* (June 16, 2020)...................................12

Report of the Civil Rules Advisory Committee (May 2, 2011).......................................5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Reuters, *UK starts probe on Apple over alleged App Store monopoly* (Mar. 4, 2021) ................13

*Testimony on SB 2333 to N.D. S. Indus., Bus. & Lab. Comm.* (Feb. 9, 2021).............................12

Ben Thompson, *Rethinking the App Store*, Stratechery (Aug. 25, 2020) ..................................2, 18

Stephen Warwick, *Korea confirms investigation into Apple and Google's 30% cut*,
   iMore (Aug. 26, 2020) ...........................................................................................................13

9A Wright & Miller, Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.) ......................................................5

**INTRODUCTION**

Apple's attempt to portray the Coalition for App Fairness (the "Coalition") as a "litigation adversary" and "public-facing litigation arm of Epic"—rather than the 501(c)(4) advocacy organization that it is—is false and entirely unsupported.  Apple offers no evidence to support its charge that the Movants—the Coalition, Forbes Tate Partners, and Meghan DiMuzio— "have consistently and repeatedly inserted themselves in[to] the underlying litigation[.]"  The record evidence is to the contrary.  As stated in the Movants' unrebutted Declarations, the Coalition exists to advance the policy and public-relations interests of its members and "advocate for freedom of choice and fair competition across the app ecosystem." Coalition for App Fairness, https://appfairness.org/ (last visited July 28, 2021).

Exhibits 1–3 of Apple's opposition ("Opp.")—which describe the Coalition as a "PR and policy campaign" intended to "[m]ove the conversation from a one-dimensional legal battle to something bigger"—demonstrate as much.  So do Apple's own document requests, which seek the Coalition's "strategy and/or public relations" materials, communications with legislators and government officials, and documents concerning its recruitment efforts and internal operations. Indeed, the policy issues surrounding the App Store are the subject of broad efforts in Congress and across numerous states and foreign countries to investigate the app marketplace and consider potential reforms.  Participation in those policy reform efforts represents the work of the Coalition—and it decidedly qualifies as something more than "commercial speech."

Movants have more than met their burden to show "some probability" of First Amendment infringement.  It is not just the identity of the Coalition's members—some of which are anonymous—that is at issue.  As set forth in the Declarations, compelled disclosure of its confidential communications, strategies, and other documents would chill the candor of internal deliberations and formulation of strategy and messaging and harm the Coalition's ability to

attract and retain new members.  The mere presence of a common protective order does not itself

foreclose application of the First Amendment privilege.  As a matter of common sense,

disclosure of a person's confidential communications to an opposing attorney will chill her

participation, perhaps entirely.  That is of particular concern here, given the substantial leverage

that Apple enjoys over app developers.  Indeed, as detailed in Movants' opening brief ("Br."),

app developers have repeatedly expressed their concerns—including in Congressional

testimony—of retaliatory action by Apple.  *See, e.g.*, Ben Thompson, *Rethinking the App Store*,

Stratechery (Aug. 25, 2020), https://stratechery.com/2020/rethinking-the-app-store/ ("[N]one of

the [twenty-one] developers were willing to go on the record for fear of angering Apple.").

Apple has failed to demonstrate how any of the materials sought are of "crucial relevance

to its case," *Pulte Home Corp. v. Montgomery Cnty.*, No. GJH-14-3955, 2017 WL 1104670, at

*4 (D. Md. Mar. 24, 2017), or go to the "heart of the matter."  *Black Panther Party v. Smith*, 661

F.2d 1243, 1268 (D.C. Cir. 1981).  Initially, Apple's arguments on the alleged relevance of

communications from app developers fail to support the vast bulk of the information it seeks

from Movants, including the Coalition's core materials (such as confidential strategy/public

relations memoranda and work plans), internal operations, and lobbying efforts.

There is no basis to suggest that app developer communications are "highly relevant" to

"merits issues and class certification."  Opp. at 22, 29.  As illustrated in Apple's own cases, class

certification determinations are made on the basis of generalized evidence, not individualized

proofs.  And Apple, being thoroughly familiar with the apps on its App Store and its contracts

with developers, fails to explain why it needs access to the Coalition's documents to establish

any relevant "individualized differences."  The notion that Apple would wait until two months

before its August 10, 2021, deadline to seek Coalition documents it now claims are "highly

relevant" to class certification—and that the Movants could search for, collect, review, and produce the volume of material sought in time for Apple's class certification opposition—is not credible. Nor are the subjective opinions of app developers concerning the App Store "highly relevant" to the merits. Antitrust laws exist to protect competition, not individual competitors. In any event, Apple can seek any arguably relevant app developer communications directly from developers, avoiding intrusion into the Coalition's First Amendment-protected activities.

Apple's final two arguments on relevance fare no better. There is no basis to suggest that any Movant will be a witness in the underlying cases, such that discovery of the Movants' documents might be relevant to "bias." And there is no need for discovery into that topic anyway, as the Coalition's opposition to the App Store is well-known and a matter of public record. Nor is discovery into the "level of coordination between the Coalition and plaintiff[s]" in any way relevant. Apple takes comments made by Judge Gonzalez Rogers of the Northern District of California completely out of context. In any event, Apple can readily obtain any evidence of "coordination" from the class plaintiffs themselves.

This Motion does not present the type of "detailed" or "nuanced" relevancy determinations that might warrant transfer to the issuing court under Rule 45(f). Congress chose Rule 45(f)'s "exceptional circumstances" language to provide that transfers would be the exception. If the need to make *any* determination of relevance qualified as an "exceptional circumstance," transfers would be the norm. Apart from relying on the Northern District of California's greater familiarity with the underlying cases and notions of judicial economy— neither of which qualifies as an exceptional circumstance—Apple does nothing to explain why that court's prior experience is necessary to consider the relevancy determinations at issue here.

Nor does Apple identify any possibility that this Court ruling on the Motion might conflict with prior discovery rulings in the cases. There has been no indication that the Northern District of California has considered the First Amendment issues raised by the subpoenas or the relevance of the Coalition-related materials. There is no compelling reason to transfer the Motion and require the Movants to file a new, abbreviated brief consistent with the Magistrate Judge's standing order in the Northern District of California.

The Court should deny Apple's motion to transfer and grant Movants' Motion to Quash.

## ARGUMENT

## I.   "EXCEPTIONAL CIRCUMSTANCES" DO NOT WARRANT TRANSFER.

### A.   Movants Properly Moved to Quash in this Court.

The suggestion that Movants engaged in "gamesmanship" and "forum shopping" by filing their Motion to Quash in this Court, Opp. at 15, 19, is baseless. Rule 45 mandates that motions seeking to quash, modify, or enforce a subpoena must be filed in the district court where compliance is required. Fed. R. Civ. P. 45(d)(2)(B)(i), (d)(3)(A)–(B); *In re Braden*, 344 F. Supp. 3d 83, 86 (D.D.C. 2018) ("The subpoena disputes involving subpoena recipients located in Washington, D.C. have been raised before this Court, rather than before the Southern District of Ohio, as required by Federal Rule of Civil Procedure 45."). Each of the subpoenas lists this District as the place of compliance. The Motion had to be filed in this Court.

Perhaps Apple is disappointed that the Coalition declined to join its improper attempt to initiate motion practice in the Northern District of California. Coalition counsel advised Apple's counsel that motions to compel must be filed in the district where compliance is required. *See* July 7–8, 2021, emails between J. Srinivasan and B. Kressin (Doc. 5-5 at 377). Counsel further objected to cramming arguments on behalf of multiple non-parties into a two-and-a-half page submission, to be drafted and approved in less than 48 hours. *Id.* Nor does the Movants'

4

declining to consent to a transfer of the Motion constitute "gamesmanship."  The issues

presented by the Motion merit more than two-and-a-half pages of briefing per side, as evidenced

by the lengths of the parties' briefs here.  The Movants have already incurred substantial time

and expense submitting their brief in this Court.  Drafting a new brief consistent with Magistrate

Judge Hixson's procedures would cost more money and unfairly limit the Movants' advocacy.

### B.       The Meaning of "Exceptional Circumstances"

Rule 45 contemplates that motions practice on third-party subpoenas will normally be

decided by the district court where compliance is required—*i.e.*, where the motion was filed and

briefing already submitted.  Fed. R. Civ. P. 45(d)(2)(B)(i), (d)(3)(A)–(B), (e)(2).  Here, that is

this Court.  Rule 45(f) permits transfer of the motion to the issuing court "if the person subject to

the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).

While Rule 45 does not define "exceptional circumstances," the Supreme Court has

recently interpreted "exceptional" as meaning "uncommon," "rare," or "not ordinary."  *Octane*

*Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545 (2014) (citing Webster's New

International Dictionary) in interpreting section of Patent Act awarding attorney's fees in

"exceptional" cases).  *See also* 9A Wright & Miller, Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.)

("The 'exceptional circumstances' standard was selected to ensure that transfer is a rare event."

(citing Report of the Civil Rules Advisory Committee (May 2, 2011))).

Rule 45's Advisory Committee Notes describe exceptional circumstances as the need to

"avoid disrupting the issuing court's management of the underlying litigation, as when that court

has already ruled on issues presented by the motion or the same issues are likely to arise in

discovery in many districts."  Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment,

subdiv. (f).  The "proponent of transfer bears the burden of showing that such circumstances are

present" and cautions that "it should not be assumed that the issuing court is in a superior

position to resolve subpoena-related motions." *Id.* Contrary to Apple's suggestion, Rule 45(f) requires that "exceptional circumstances must first be found before any balancing takes place." *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 407 (N.D. Ala. 2014); Fed. R. Civ. P. 45(f) (court "may transfer … *if* the court finds exceptional circumstances") (emphasis added).

### C. Exceptional Circumstances Do Not Exist Here.

Apple relies heavily on the Northern District of California's "familiar[ity] with the facts of these complex antitrust cases" and the alleged "judicial economy" of having the Motion decided by that court. Opp. at 1, 8–10, 18–21. But neither greater familiarity nor judicial economy are listed as "exceptional circumstances" in the Advisory Committee Notes. If this were enough, transfer "would almost always be appropriate." *Woods*, 303 F.R.D. at 408–09 (noting Advisory Committee Notes "do not cite judicial efficiency as a basis for transfer").[1]

While Apple notes that the Northern District of California has issued "at least 18 orders deciding at least 25 discovery disputes that arose in the coordinated discovery proceedings," Opp. at 1, it fails to draw any parallels between those prior rulings and what is at issue here. To the best of the Movants' knowledge, the Northern District of California has made no rulings

---

[1] *See also In re Subpoena on Sorrento Therapeutics, Inc.*, No. 17-cv-2442, 2018 WL 788899, at *2 (S.D. Cal. Feb. 8, 2018) (issuing court's "familiarity with the claims at issue and the factual history of the case" is a "concern that exists in almost every [Rule 45(f)] motion and cannot alone be sufficient to constitute an 'extraordinary circumstance'"; otherwise, the "exception would swallow the rule" (citations omitted)); *Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, No. 16-MC-80122, 2016 WL 8542561, at *2 (N.D. Cal. Aug. 3, 2016) ("As to the issue of judicial economy, such a risk would be inherent in any motion to compel determined by an issuing court."); *Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 15-MC-64003, 2015 WL 5934760, at *4 (D. Mass. June 18, 2015), report and recommendation adopted, 2015 WL 5944286 (Aug. 27, 2015) (issuing court's greater familiarity with the case "cannot be what Congress meant when it required a finding of exceptional circumstances"); *CMB Expert, LLC v. Atteberry*, No. 14-mc-51, 2014 WL 2197840 (N.D. Tex. May 27, 2014) ("[T]he fact that the issuing court undeniably had greater familiarity with the underlying action did not constitute an exceptional circumstance.").

pertinent to the First Amendment privilege or considered whether Coalition-related materials are relevant.  There is no risk that this Court would rule on issues the Northern District of California "has already ruled on," as contemplated in Rule 45's Advisory Committee Notes.  Nor does the Motion implicate legal issues pending in the underlying suit, as was the case in this Court's holding in *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 25 (D.D.C. 2018) ("The propriety of these third-party subpoenas necessarily turns on what [plaintiff] Topps can obtain from [defendant] Koko's, and *that* issue is already before the originating court.").[2]

Apple also suggests that transfer is necessary given the "[p]rocedural [p]osture" of the underlying litigation and, "[m]ost pressingly," its August 10, 2021 deadline to oppose class certification.  Opp. at 17–18.  This Court, however, has already agreed to expedite consideration of the Motion.  In any event, the suggestion that Movants have any unique information "highly relevant to Apple's class certification opposition," *id.* at 29, is baseless.  *See infra* at 21–23.  And the notion that the Motion will be decided and documents produced before the August 10 deadline—and that Apple is actually going to sift through the documents and incorporate any

---

[2] Apple also suggests that its intention to file motions to compel against developers Basecamp and Match in the Northern District of Illinois and the Northern District of Texas presents a risk of inconsistent judgments absent a transfer of all motions to the Northern District of California.  Opp. at 19.  Notably, Apple has been aware of Basecamp's and Match's refusal to produce the Coalition-related documents for months.  Only now, in a transparent effort to support their arguments in favor of transfer, has Apple moved to compel.  Relatedly, Apple's suggestion that Yoga Buddhi "withdrew its claim that the documents were protected by some First Amendment privilege" as part of some "strateg[y]" to "avoid ripening a conflict that would be heard in the Northern District of California," *id.* at 4, is groundless.  Yoga Buddhi is a small developer with a handful of employees and limited financial resources.  Like most political associations, the Coalition's members have varying degrees of involvement.  As a relatively inactive member, Yoga Buddhi made a business decision not to litigate with Apple over a small subset of documents.  The scope of responsive information in the Movants' possession is materially different.

meaningful new information in its briefing—is unrealistic regardless of which court decides the Motion. Apple's delay does not qualify as an "exceptional circumstance" warranting transfer.

The Movants acknowledge that courts in this District have transferred subpoena-related motions when faced with "detailed" or "nuanced" relevance determinations. *See* Opp. at 20. But the need to make *some* determination of relevance exists in nearly every discovery dispute; courts do *not* uniformly transfer when resolution requires some assessment of relevance. *See, e.g.*, *Hood v. City of Chicago*, No. 19-MC-00123, 2019 WL 5295169 (D.D.C. Oct. 18, 2019) (declining to transfer, finding "the issues presented here are not complex, and they do not rest on facts or law that the Illinois court is uniquely positioned to decide"); *In re Subpoena on Sorrento Therapeutics, Inc.*, No. 17-cv-2442, 2018 WL 788899, at *5–6 (S.D. Cal. Feb. 8, 2018) (granting in part and denying in part motion to compel, based on relevance determinations); *Woods*, 303 F.R.D. at 408 (denying transfer even though motion to quash "raises concerns of relevance").

Here, Apple relies on general, unsupported assertions that deciding the Motion will require a court "to make detailed relevance determinations" and engage in a "nuanced analysis." Opp. at 20–21. It neither ties the requested discovery to any specific claim or defense nor articulates *why* the issuing court's prior experience with the underlying cases is necessary to appreciate the relevance (or irrelevance) of the information sought. As explained in Movants' opening brief, and as further discussed below, information concerning the Coalition's formation, coalition-building efforts, research, strategy, advocacy, and public relations efforts—the heart of what is sought in the subpoenas—is simply irrelevant to class certification issues or the underlying merits of the cases. This Court is fully capable of making that determination. It is not a "close call." This Court is also fully capable of finding that any conceivably relevant information can be sought from alternative sources, including the plaintiffs themselves.

The cases cited by Apple involved more difficult relevancy determinations and other circumstances that do not exist here.  In *In re Braden*, the court noted that plaintiffs were "assert[ing] a theory that is on the cutting edge of constitutional law."  344 F. Supp. 3d at 91. Moreover, one of the subpoena recipients had ***consented*** to transferring the motion and the issuing court, after being consulted, agreed that the complexity and procedural posture of the underlying case warranted transfer.  *Id.* at 85, 95.  *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10 (D.D.C. 2014), involved a "large and complex patent infringement suit" where familiarity with the underlying patents was necessary to make relevancy determinations. Furthermore, the subpoenaed party had agreed to acquire the defendant in the case (and thus had a "direct economic interest" in the case) and, as in *Braden*, the issuing court had agreed that exceptional circumstances warranted transfer.  *Id.* at 12–13.  In *In re Disposable Contact Lens Antitrust Litigation*, the court relied heavily on the issuing court's status as an MDL court, which it believed provided independent grounds for it to adjudicate a motion to compel that had already been filed in that court.  306 F. Supp. 3d, 372, 377–79 (D.D.C. 2017).  Finally, in both *Flynn v. FCA US LLC* and *Lipman v. Antoon*, the courts concluded that the issuing court were in a far superior position to evaluate what they found to be "nuance[d]" relevancy determinations in those cases.  216 F. Supp. 3d 44, 47 (D.D.C. 2016); 284 F. Supp. 3d 8, 14 (D.D.C. 2018).  Here, Apple fails to explain why the issuing court is uniquely positioned to adjudicate the Motion.[3]

---

[3] Apple further claims that the Northern District of California is "best-suited" to assess the impact of the protective order issued in the case "on Movants' First Amendment privilege arguments."  Opp. at 21.  But there has been no indication that Magistrate Judge Hixson has grappled with the First Amendment privilege issues implicated here.  And the mere fact that an issuing court has issued a protective order cannot qualify as an "exceptional circumstance" warranting transfer, particularly given the prevalence of protective orders in litigation generally.

The Advisory Committee Notes provide that the "prime concern" in deciding a Rule 45(f) transfer motion is "avoiding burdens on local nonparties subject to subpoenas." Fed. R. Civ. P. 45 advisory committee note to 2013 amendment, subdiv. (f).  As noted, Movants have already incurred substantial expense in briefing with this Court; drafting a new brief consistent with Magistrate Judge Hixson's procedures would cost more money and would unduly limit the Movants' advocacy.  In any event, the alleged "lack of a burden imposed on the nonparty by transfer is not in itself an exceptional circumstance and is insufficient to warrant transfer." *Woods*, 303 F.R.D. at 407; *see also Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 15-MC-64003, 2015 WL 5934760, at *4 (D. Mass. June 18, 2015) ("Isola's claim that the burden on EMC is negligible, even if true, does not create exceptional circumstances.").

## II.     THE FIRST AMENDMENT PRIVILEGE APPLIES.

### A.     The Coalition is an Advocacy Organization Engaged in Activities Protected by the First Amendment.

Apple's characterization of the Coalition as the "public-facing litigation arm of Epic" and a "litigation adversary" designed to "serve a strategic litigation purpose," Opp. at 2, 22, is simply false.  Meghan DiMuzio's unrebutted Declaration shows that the Coalition exists to advance the policy and public-relations interests of its members, not to coordinate, promote, or assist in litigation.  *See* Doc. 1-6 ("DiMuzio Decl.") ¶¶ 3–6.[4]  The "Project Liberty" documents attached

---

[4] The media regularly reports on the Coalition's public policy advocacy efforts.  *See, e.g.*, Emily Birnbaum, *Meet the app developers battling Apple and Google*, Politico (Apr. 20, 2021), https://www.politico.com/newsletters/morning-tech/2021/04/20/meet-the-app-developers-battling-apple-and-google-794769 ("The Coalition for App Fairness, a small-but-mighty group of app developers aggrieved with Apple and Google, has been aggressively pushing for legislation at the state level to change the way their app stores work, and they've been surprisingly successful at convincing state legislators to take up their fight.").

to Apple's Opposition are entirely consistent with the DiMuzio's Declaration—and completely at odds with Apple's characterization of the Coalition.

Exhibit 1 is a "Project Liberty Update" slideshow that states Epic would "attempt to lead a coalition of other leading tech companies *in a PR and policy campaign* against the 30% tax." Doc. 5-5 at 4 (emphasis added). Exhibit 2 provides additional detail on the PR campaign, including the formation of a "501c4" coalition and hiring a firm that "can run the strategy" and "build the coalition." *Id.* at 19–20. It does not mention litigation. Exhibit 3, another "Project Liberty Update," describes the purpose of the Coalition: "Establish a 501c4 Organization to Advocate on Behalf of Our Policy Issues." *Id.* at 58. It further notes that the goal the Coalition was to "[m]ove the conversation from a one-dimensional legal battle to something bigger." *Id.*[5]

Apple's own document requests further demonstrate that it understands that the Coalition is engaged in First Amendment-protected activities. While Apple says it "is not seeking discovery from Movants because of independent advocacy," Opp. at 22, its requests belie that assertion. Apple seeks communications with "any federal, state, or local governmental entity, either foreign or domestic," regarding any app marketplace. Doc. 1-3 at 12. It seeks documents concerning the Coalition's "publications, press releases, letters to … government agencies," and the Coalition's website. *Id.* at 12–13. It demands all "strategy and/or public relations" documents and communications with "any consultants, consulting firms, political strategist, advisors and/or public relations firms." *Id.* at 14.

---

[5] That Epic spearheaded the formation of the Coalition is neither remarkable nor relevant to whether its activities are subject to First Amendment protection. Advocacy organizations are routinely spearheaded by one or a handful of individuals or entities seeking to form a coalition to promote their views or interests.

To create the misimpression that Movants have some involvement in the underlying litigation, Apple attempts to conflate some of the Coalition's members with the Coalition itself. *See, e.g.*, Opp. at 2 (accusing Coalition of coordinating with class plaintiffs based on the involvement of "some of its most prominent members" in the *Epic* case); *id.* at 22 (stating "Movants and Coalition members inserted themselves into these litigations "). Of course, one Coalition member (Epic) filed suit against Apple, and some other members were witnesses in that case. But the independent activities of certain members cannot be attributed to the Movants, who never "inserted" themselves into any of the litigation. *Id.*; DiMuzio Decl. ¶ 9.

Finally, Apple's claim that the Coalition-related materials it seeks are merely "commercial speech," Opp. at 3–4, 23, is unsupportable. The Coalition promotes policies to improve the app ecosystem by engaging with legislators and regulators, developing and publishing content, and building public support for its positions. Br. at 4–5. Any suggestion that the app-fairness principles promoted by the Coalition are driven by, or limited to, three antitrust litigations pending in the Northern District of California ignores the breadth of domestic and international efforts to reform the app marketplace. This includes hearings before Congress, investigations in multiple countries, and proposed legislation in several states; the Coalition and its members have frequently provided testimony in these proceedings.[6]

---

[6] *See, e.g.*, Br. at 19; *Arizona lawmakers step into battle between app developers, tech giants*, Tucson.com (Feb 23, 2021), https://tucson.com/business/arizona-lawmakers-step-into-battle-between-app-developers-tech-giants/article_e6d334a9-a39e-5702-ab4c-cdca49e0442a.html; *Testimony on SB 2333 to N.D. S. Indus., Bus. & Lab. Comm.* (Feb. 9, 2021), https://www.legis.nd.gov/assembly/67-2021/testimony/SIBL-2333-20210209-6032-F-KRESSIN_BRANDON.pdf; *Antitrust Applied: Examining Competition in App Stores: Before the Subcomm. on Competition Pol'y, Antitrust, & Consumer Rights of the S. Comm. on the Judiciary* (Apr. 21, 2021), https://www.judiciary.senate.gov/meetings/antitrust-applied-examining-competition-in-app-stores; Press Release, European Commission, *Antitrust: Commission opens investigations into Apple's App Store rules* (June 16, 2020), https://ec.europa.eu/commission/presscorner/detail/en/ip_20_1073; Leah Nylen, *Apple, Google*

The Coalition's activities do not fit the narrow definition of "commercial speech," which is "speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001).  That the Coalition advocates for issues that have economic implications does not render its speech "commercial" and subject it to less First Amendment protection.  As the Supreme Court recently reaffirmed, the First Amendment protects the "right to associate with others" in pursuit of "a wide variety of political, social, ***economic***, educational, religious, and cultural ends." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (emphasis added) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)).  In the foundational First Amendment privilege case, the Court held "it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958).  Courts regularly recognize the privilege for organizations promoting economic policies. *See, e.g.*, *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011); *Ass'n of Equip. Mfrs. v. Burgum*, 427 F. Supp. 3d 1082, 1097 (D.N.D. 2019); *All of Auto. Mfrs., Inc. v. Jones*, No. 08-cv-555, 2013 WL 4838764 (N.D. Fla. Sept. 11, 2013).

---

*app store fights move to the states*, Politico (Mar. 3, 2021), https://www.politico.com/news/2021/03/03/apple-google-app-store-fights-move-to-the-states-473388; Reuters, *UK starts probe on Apple over alleged App Store monopoly* (Mar. 4, 2021), https://currently.att.yahoo.com/att/uk-watchdog-probing-apple-alleged-101526091.html; Malcolm Owen, *Australia antitrust agency examining Apple's App Store policies*, appleinsider (Sept. 8, 2020), https://appleinsider.com/articles/20/09/08/australia-antitrust-agency-examining-apples-app-store-policies; Stephen Warwick, *Korea confirms investigation into Apple and Google's 30% cut*, iMore (Aug. 26, 2020), https://www.imore.com/korea-confirms-investigation-apple-and-google-app-payment-systems.

### B.      Movants Have Made A *Prima Facie* Showing Of First Amendment Infringement.

An entity asserting a First Amendment privilege need only show an "arguable"
infringement of First Amendment rights. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th
Cir. 2010). It "need not prove to a certainty that [its] First Amendment rights will be chilled by
disclosure," *Black Panther*, 661 F.2d at 1267–68, but, rather, must show only "some probability"
of a chilling effect, *Pulte*, 2017 WL 1104670, at *4. Here, the Coalition has attested that
disclosure of the Coalition's confidential documents will chill its associational rights. *See* Doc.
1-6. Three Coalition members submitted similar declarations. *See* Docs. 1-7 ("Hansson Decl."),
1-8 ("Eleftheriou Decl."), 1-9 ("Daru Decl."). The declarations support the "self-evident
conclusion" that compelled disclosure implicates First Amendment rights. *Perry*, 591 F.3d at
1163.

Each of the seven reasons Apple suggests to the contrary lack merit.

*First*, Apple's suggestion that most of the Coalition's membership is "already public,"
Opp. at 25, ignores that Movants are concerned about more than simply disclosing the identity of
its members. Disclosing the Coalition's private documents and communications will chill the
candor of internal deliberations and formulation of strategy and messaging, to the detriment of
the Coalition's advocacy efforts. *See* DiMuzio Decl. ¶¶ 11–13 (discussing the negative effect
compelled disclosure would have on the Coalition's ability to formulate its political strategy and
messaging). Moreover, disclosure would reveal the level of members' individual involvement in
the Coalition and specific (and private) details regarding their opposition to Apple, discouraging
meaningful participation going forward. *Id.* ¶ 16. Compelled disclosure would also inhibit the
Coalition's ongoing recruitment efforts. *Id.* ¶ 17 (explaining why disclosure of the requested
materials would harm the "Coalition's efforts to attract and retain active members").

*Second*, a protective order does not obviate the Movants' First Amendment concerns.  If mere entry of a protective order were enough to defeat a *prima facie* showing of a chilling effect on associational rights, the privilege would be inapplicable in the vast number of cases.  It is well-established that a protective order "cannot eliminate" the chilling effect that can result from disclosure.  *Perry*, 591 F.3d at 1164; *see also Sexual Minorities of Uganda v. Lively*, No. 12-cv-30051, 2015 WL 4750931, at *4 (D. Mass. Aug. 10, 2015); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-CV-660, 2014 WL 6854416, at *3 (S.D. Ill. Dec. 5, 2014); *Tree of Life Christian Schs. v. City of Upper Arlington*, No. 11-CV-00009, 2012 WL 831918, at *3 (S.D. Ohio Mar. 12, 2012).  The Supreme Court recently reemphasized that "disclosure requirements can chill association even if there is no disclosure to the general public."  *Ams. for Prosperity*, 141 S. Ct. at 2388 (internal quotation marks, alterations, and citation omitted).  Whether the Coalition's private internal documents are being reviewed directly by its main political adversary or that adversary's attorneys has little bearing on the chilling effect of disclosure.  As a matter of "common sense," if "a person knows that her communications will be disclosed to" attorneys who might seek additional discovery based on her private communications or seek to use those communications in court, "she may be more cautious in her statements or refrain from speaking entirely."  *Pulte*, 2017 WL 1104670 at *8.[7]

---

[7] The terms of the protective order entered in these cases provide ample reason for Movants to be concerned about broader disclosure.  The standard for material to be labeled "Attorneys' Eyes Only" under the protective order is if further distribution "would create a substantial risk of serious harm that could not be avoided by less restrictive means."  Doc. 85 at 2, *Cameron v. Apple Inc.*, No. 19-cv-3074 (N.D. Cal. Jan. 9, 2020).  On top of that, the protective order requires the "Designating Party" to bear the "burden of persuasion" in any challenge to an "Attorneys' Eyes Only" designation.  *Id.* at 7.  Instead of Apple having the burden to prove that the documents it seeks are "highly relevant" and "actually needed" to prove its case, *Pulte*, 2017 WL 1104670 at *4, Apple would require Movants to produce all responsive documents to Apple's attorneys and then prove to the court—on a document-by-document basis—that further disclosure to Apple (and others) presents "a substantial risk of serious harm."  Such a protective

*Third*, Apple's claim that it uniformly applies its guidelines—such that there is no risk of retaliation—ignores record evidence that Apple has departed from this "uniform application" for app developers who cross the company.  Apple does not respond to Congressional testimony cited in Movants' opening brief describing Apple's retaliatory actions against Spotify.  Br. at 19. Testimony from that Congressional hearing also described Apple's uneven application of its App Store policies against competitors.  *See Antitrust Applied: Examining Competition in App Stores: Before the Subcomm. on Competition Pol'y, Antitrust, & Consumer Rights of the S. Comm. on the Judiciary* (Apr. 21, 2021), https://www.judiciary.senate.gov/meetings/antitrust-applied-examining-competition-in-app-stores (Statement of Horacio Gutierrez, Head Of Global Affairs & Chief Legal Officer, Spotify, at 5 (Apple's "restrictions have not been imposed uniformly; to the contrary, they have been targeted on companies that are, or might become, Apple's competitors in downstream markets for providing goods and services to consumers."), at 9 ("Apple's treatment of Spotify has not been applied across-the-board to all apps in its App Store. Rather, Apple singles out apps that compete with Apple's own products.")[8]; Statement of Kirsten Daru, General Counsel, Tile, Inc. (describing Apple's mistreatment of Tile, Inc. when Apple launched a competing app)).[9]  App developers have reason to question Apple's uniform application of its policies.

*Fourth*, Apple's claim that DiMuzio's testimony is "mere speculation and divorced from reality," Opp. at 26, ignores that DiMuzio is fully competent to attest to the chilling effect on her

---

order cannot even "ameliorate," let alone "eliminate," the chilling effect resulting from disclosure.  *Perry*, 591 F.3d at 1164.

    [8] Statement available at https://www.judiciary.senate.gov/imo/media/doc/Final% 20Testimony%20of%20Horacio%20Gutierrez_Spotify.pdf.

    [9] Statement available at https://www.judiciary.senate.gov/imo/media/doc/04.21.21% 20Kirsten%20Daru%20Senate%20Judiciary%20Testimony%20Final.pdf.

own activities, *see* DiMuzio Decl. ¶ 13, and on the Coalition's internal operations.  The court

relied on precisely these kinds of declarations from leaders of the ballot-issue committee in *Perry*

for the "self-evident" conclusion that disclosure of confidential internal communications will

chill the candor of future such communications.  *See Perry*, 591 F.3d at 1163; Doc. 187-9, *Perry*,

264 F.R.D. 576  (N.D. Cal. 2009) (No. 09-CV-2292).  Apple offers no evidence to rebut Ms.

DiMuzio's testimony on the chilling effect on the Coalition's internal formulation of strategy and

messaging and instead focuses on an assertion that the Coalition's members have not shown a

reasonable fear of retaliation because those members remain on the App Store.  *See* Opp. at 26–

27.  But Apple's ability to retaliate is not limited to removing an app from the App Store (*see* Br.

at 19), and continuing to sell one of the world's most popular apps (*Fortnite*) is not particularly

probative of the company's willingness to retaliate against others.

    *Fifth*, Apple's further attempts to discredit the Movants' Declarations as "hearsay" and

"speculation" are without merit.  Each declarant attested to the chilling effect that compelled

disclosure of confidential communications would have *on their own speech and participation* in

the Coalition's activities.  *See* DiMuzio Decl. ¶ 13; Hansson Decl. ¶ 13; Eleftheriou Decl. ¶ 7;

Daru Decl. ¶¶ 6, 9.  And the declarants' concerns of retaliation are not unfounded speculation.

Ms. DiMuzio attests to recruitment difficulties based on personal interactions with prospective

members.  *See* DiMuzio Decl. ¶ 17.  Other declarants recount discussions with other app

developers who expressed fear of retaliation if they joined the Coalition.  *See* Hansson Decl.

¶ 14.  The declarants cannot compromise the anonymity of these app developers by identifying

them in their declarations.  The facts here bear little similarity to the cases cited by Apple, where

there was scant evidence to support a fear of retaliation.  The public record demonstrates

widespread fear of Apple's retaliatory tactics.  *See supra* at 2; Sean Hollister, *Apple made*

*ProtonMail add in-app purchases, even though it had been free for years*, The Verge (Oct. 8,

2020), https://www.theverge.com/2020/10/8/21506995/apple-forced-in-app-purchase-

protonmail-ceo-wordpress-iap ("ProtonMail still hasn't removed its own in-app purchases

because it fears retaliation from Apple."); Thompson, *Rethinking the App Store*, *supra* ("[N]one

of the [twenty-one] developers were willing to go on the record for fear of angering Apple.").[10]

>     *Sixth*, Apple's argument that it seeks only "private disclosure for a limited use," Opp. at

28, simply rehashes Apple's flawed argument that the protective order is sufficient to protect

Movants' First Amendment rights.  As explained above, *see supra* at 15, the terms of the

protective order cannot guarantee that every document produced will remain "private" and "for a

limited use."  Nor does the existence of a protective order obviate the chilling effect of disclosing

the Coalition's confidential communications outside of the Coalition.

>     *Seventh*, Apple's claim that the Coalition's lobbying communications are not protected

by the First Amendment is unsupported.  Opp. at 28–29.  Apple mischaracterizes Movants'

citation to *Sol v. Whiting*, No. 10-cv-01061, 2013 WL 12098752 (D. Ariz. Dec. 11, 2013).

Movants cited that case to distinguish it, not rely on it.  *See* Br. at 13 n.4.  For its part, Apple

does not attempt to address the authorities that Movants cited in support of their position that

disclosure of the content of lobbying communications implicates First Amendment rights.  *See*

*id.* at 13.  Instead, Apple represents that its request is limited to "non-FOIA-exempt

communications."  Opp. at 29.  But, because only the government is authorized to make FOIA

---

> [10] As noted above, Yoga Buddhi's relative lack of active involvement in the Coalition
and its business decision not to engage in a protracted legal dispute with Apple over a handful of
documents is understandable in light of its small size and relative lack of resources.  But Yoga
Buddhi's willingness to produce a small number of documents—which are far removed from the
sensitive, internal communications among staff regarding formulation of the Coalition's strategy
and messaging—does not in any way suggest that compelled disclosure would not chill the
Coalition's associational rights.

determinations, *see* 5 U.S.C. § 552(a), Movants are not in a position to comply with this document request.  Apple must therefore seek non-FOIA-exempt documents directly from the government and avoid imposing the burden of making FOIA requests on the non-party Movants. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

In sum, Movants have met their burden of showing "arguable First Amendment infringement" and "some probability" of a chilling effect resulting from disclosure.  *Perry*, 591 F.3d at 1160; *Pulte*, 2017 WL 1104670 at *4.  None of Apple's arguments undercut the "self-evident" conclusion that disclosure of the Coalition's confidential documents and communications would chill Movants' First Amendment rights.  *Perry*, 591 F.3d at 1163.

## III.  THE MATERIALS REQUESTED BY THE SUBPOENAS ARE NEITHER RELEVANT NOR "CRUCIAL" TO THE UNDERLYING LITIGATION.

Because the Coalition-related materials sought by the subpoenas are covered by the First Amendment privilege, Apple must show "that the information sought is of ***crucial relevance*** to its case; that the information is ***actually needed to prove its claims***; that the information is ***not available from an alternative source***; and that the request is the ***least restrictive way*** to obtain the information."  *Pulte*, 2017 WL 1104670 at *4 (emphasis added); *see also Perry*, 591 F.3d at 1164 (materials protected by First Amendment subject to "heightened relevance standard").

Apple cannot make that showing.  The subpoenas are a blatant attempt to peak under the tent of the Coalition's political, public relations, and other advocacy efforts.

### A.  Apple's Strained Relevancy Arguments Do Not Support the Bulk of its Document Requests.

Apple does not dispute that its requests effectively seek ***all*** of the Coalition's documents and communications.  *See* Br. at 12.  Yet the only categories of documents that Apple suggests have any relevance are communications from app developers regarding their views of the App Store and any communications the Coalition may have had with plaintiffs.  *See* Opp. at 29–31.  It

argues, first, that "communications about the App Store or App Store litigation" are relevant to "the harm or benefits the developers perceive from the App Store and the policies at issue in the litigations," the "positive experiences that developers have had with Apple's App Review process," the importance of "Apple's security and privacy features" to app developers, and developers' "varying monetization strategies." *Id.* at 29–30.  It argues, second, that such communications are relevant to class certification issues, including whether there are "individualized differences among developers that defeat predominance and issues concerning injury." *Id.* at 30.  Third, Apples argues that the communications sought could be relevant to witness bias.  *See id.* at 31 (citing language from *Tesla Motors, Inc. v. Johnson*, No. 16-cv-1158, 2017 WL 11500988 (W.D. Mich. Dec. 11, 2017) that "communications sought in discovery are directly and highly relevant to Tesla's claims").  Finally, Apple says that communications with app developers could reflect "coordination" between the Coalition and the plaintiffs in the antitrust cases.  Opp. at 32.

These arguments fail to support the vast bulk of what Apple seeks and that Movants possess—including the Coalition's confidential strategy and public relations memos, budget documents, work plans, drafts of public statements and materials related to the Coalition's formation, internal guidelines, financing, and organizational structure—all of which are swept into Apple's boundless discovery requests.  *See* Coalition Subpoena, Request Nos. 6–7, 10–17.  Nor does Apple provide any basis to support its request for Movants' communications with legislative or government officials concerning Apple or the app marketplace.  *See* Coalition Subpoena, Request Nos. 4 and 6.  These requests must be quashed on this basis alone.

**B.      Any Subjective Opinions Contained in App Developer Communications Are Not Relevant To the Underlying Litigation.**

The subjective opinions of app developers concerning the App Store are not "highly relevant" to the underlying litigation.  The class plaintiffs must prove that Apple "(1) possessed monopoly power in the relevant market, (2) wilfully acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury."  *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004).  Because antitrust laws exist for "the protection of competition not competitors," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977), the central issue in the underlying cases is whether the App Store 30% "app tax" harms competition on a market-wide basis.  Evidence of how particular app developers "perceive" Apple's general App Store policies is immaterial.  Apple cites no authority for the proposition that the individual opinions of market participants is relevant, much less of "crucial relevance."

To the extent app developers' subjective opinions have any attenuated relevance to the case, Apple can seek this information directly from app developers.  *See, e.g.*, *Perry*, 591 F.3d at 1161 (requiring that the requested "information must be otherwise unavailable"); *Pulte*, 2017 WL 1104670, at *4 ("[T]he party seeking disclosure [must] prove that … the information is not available from an alternative source.").[11]  Apple offers no any authority for the notion that it may seek discovery, even under ordinary discovery standards, from a non-party membership organization on the speculative basis that some non-party members might have made statements of limited relevance to the underlying case.  There is no basis to entertain Apple's fishing expedition into the Coalition's First Amendment-protected activity.

---

[11] Apple asserts it may seek discovery from Movants for "consistently and repeatedly insert[ing] themselves in the underlying litigation."  Opp. at 32.  But, as explained, *supra* at 12, Movants have not inserted themselves in the underlying litigation, and Apple has offered no evidence that they have.

**C.   App Developer Communications Are Not Relevant to Class Certification Issues.**

Apple fails to explain how "individualized differences," including potentially varying "concerns, operations, and incentives," among app developers would affect the class-wide resolution of the relevant issues—*i.e.*, the definition of the relevant market, whether Apple unlawfully exercised monopoly power, and antitrust injury—none of which are dependent on individualized proof of the type described by Apple.  *See, e.g.*, *In re Apple iPod iTunes Antitrust Litig.*, No. C 05-00037, 2008 WL 5574487, at *4 (N.D. Cal. Dec. 22, 2008) ("Both of these threshold issues [market definition and market power] are complex factual inquiries that do not depend in any way upon individualized proof."); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967, 2013 WL 5979327, at *6 (N.D. Cal. Nov. 8, 2013) ("potential existence of individualized damage assessments … does not detract from the action's suitability for class certification" (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010))); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 847–48 (D.N.J. 2015).  In any event, Apple fails to explain why it needs discovery from the Movants to establish any "individualized differences" that could be relevant.  Through its screening processes and contracts with developers, Apple already has extensive information about any relevant "individualized differences."

Nor does the possibility that some developers might disagree with the putative class action support Apple's intrusive discovery.  App developers who believe the class action does not serve their interests will have the opportunity to opt out.  The cases that Apple cites for the

proposition that conflicts amongst putative class members might be relevant to the "Rule 23 inquiry," Opp. at 30, in no way support the type of discovery Apple seeks here.[12]

Finally, the suggestion that the Apple would wait until the two months before its August 10, 2021, deadline to issue discovery "highly relevant to issues of class certification," *id.* at 3, 13, 29, is not credible. And if the discovery sought is as vital to class certification issues as Apple now suggests, it is difficult to understand why Apple granted a month extension to The Messina Group, which was served with a subpoena substantially similar to the ones at issue here. It is safe to assume that Apple has already developed the evidence and expert testimony that it needs to oppose class certification.

### D. Unsupported Speculation That Movants Might Appear as Witnesses Does Not Support Apple's Discovery.

Apple asserts that the discovery is relevant to the issue of witness bias because "it is likely that one or more of the Movants or the Coalition members will be called as a witness by plaintiffs." Opp. at 31. With respect to the Movants, this assertion is pure unsupported speculation. Movants are not involved in the litigation, have not been identified as witnesses, and do not anticipate being called as witnesses. Apple's statement that the Movants "were already called in the Epic case," *id.*, is false. Moreover, as noted in Movants' opening brief, the Coalition's "bias" against Apple is well-known and a matter of public record. Discovery into the

---

[12] In *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, the court considered competing experts' statistical models in determining whether predominance has been met, not individualized evidence from putative class members. *See* 993 F.3d 774, 791–93 (9th Cir. 2021) ("As the district court recognized, Plaintiffs 'must establish, ***predominantly with generalized evidence***, that all (or nearly all) members of the class suffered damage as a result of Defendants' alleged anti-competitive conduct.'" (emphasis added) (quoting *In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308, 320 (S.D. Cal. 2019) (simplified))).

Coalition's First Amendment-protected activities to show bias is unnecessary.[13]  With respect to Coalition **members** that are identified as witnesses, Apple can seek discovery from them (although, again, it is difficult to see why Apple would need discovery to establish their bias against the company).  Indeed, Movants understand Apple has already issued subpoenas on some Coalition members.[14]

### E.    Discovery Into Plaintiff "Coordination" Is Irrelevant.

Apple suggests that Judge Gonzalez Rogers "made clear during the *Epic v. Apple* trial that the level of coordination between the Coalition and the plaintiff (Epic) was relevant."  Opp. at 32.  But the court's question to Epic's CEO on whether he contacted "the lawyers who had already sued Apple on this same topic" before Epic filed suit said nothing about the Coalition.  It is clear that the court was interested in why Epic filed its own lawsuit when there was a pending class action brought on behalf of all app developers.  The court went on to ask Mr. Sweeney: "But you knew that there was a lawsuit already on behalf of all developers against Apple, didn't you? … And you just ignored that and went forward on your own?"  Doc. 5-5 at 71.  If anything, this colloquy demonstrates a *lack* of coordination among litigants.  The court's questions do not suggest that the issue of coordination is in any way relevant to the claims or defenses in the underlying cases, nor has Apple offered any reason to believe the Coalition coordinated with the litigants.  And if any such documents exist, Apple can seek them from the class plaintiffs.

---

[13] *See, e.g.*, *SEC vs. Treadway*, 438 F. Supp. 2d 218, 221 (S.D.N.Y. 2006) ("[c]ourt has discretion to tailor and limit the details of bias impeachment material, 'when the main circumstances from which bias proceeds have been proven'" (quoting *United States v. Weiss*, 930 F.2d 185, 197 (2d Cir. 1991); McCormick on Evidence § 40 (3d ed. 1984))).

[14] Apple points to an instance from the *Epic* litigation where it allegedly could not obtain documents regarding a witness (a Facebook employee) because that witness was not identified until after the close of discovery.  But Facebook and its employees *were* disclosed as potential witnesses more than one month before the close of discovery.  *See* Doc. 398, *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640 (N.D. Cal. Apr. 5, 2021).

In sum, Apple has failed to show that the materials requested are relevant—much less "highly relevant" or "crucial"—to the underlying antitrust cases.

## IV. THE DOCUMENT REQUESTS ARE DISPROPORTIONAL TO THE NEEDS OF THE CASE AND VIOLATE ORDINARY DISCOVERY STANDARDS.

In their opening brief, Movants further argued that Apple's subpoenas should also be quashed under ordinary discovery standards, regardless of the extent of First Amendment protection. Br. at 22–24 (citing Fed. R. Civ. P. 26(b)(1)). Movants argued, *inter alia*, that the document requests are disproportional to the needs of the case based on the sheer volume of documents requested in relation to their lack of importance to resolving the main claims and defenses in the underlying antitrust litigation. *Id.* at 23. Movants also argued that many of the documents requested (to the extent they exist) could be sought through party discovery. *Id.* at 23–24. Apple attempts no counterargument, offering only an unresponsive statement that Movants have not sufficiently quantified the burden of responding to the discovery. Opp. at 33.[15] Because Apple does not respond to Movants' argument that the discovery requests are disproportional to the needs of the case and/or can be made through party discovery, the court may properly treat these arguments as conceded. *See, e.g.*, *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201 (D.D.C. 2009); *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013); Standing Order for Cases Before Judge Trevor N. McFadden at 5 ("[W]here a party fails to respond to arguments in opposition papers, the Court may treat those specific arguments as conceded.").

---

[15] Movants did not "assert a blanket privilege objection to *the entire subpoena*." Opp. at 33. Movants provided unique objections to each request. And, to be clear, Apple's claim that Movants "refused to discuss custodians or search terms" or "articulate [the] burden" of responding to the subpoena, *id.* at 5, is false. Recognizing the primacy of the overarching First Amendment and relevance issues, Apple's counsel never requested that information.

Dated: July 28, 2021

/s/David S. Torborg

David S. Torborg (D.C. Bar No. 475598)
Stephen J. Kenny (D.C. Bar No. 1027711)
Joseph P. Falvey (D.C. Bar No. 241247)
JONES DAY
51 Louisiana Ave. NW
Washington, DC, 20001-2113
Tel.: 202-879-3939
Fax: 202-626-1700
dstorborg@jonesday.com

*Attorneys for Forbes Tate Partners and
Meghan DiMuzio*

Brandon Kressin (D.C. Bar No. 1002008)
KANTER LAW GROUP
1717 K Street NW
Suite 900
Washington, DC 20006
Tel.: 202-792-3037
brandon@kanterlawgroup.com

*Attorney for the Coalition for App Fairness*