UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COALITION FOR APP FAIRNESS,** *et al.*,<br><br>                    Non-Party Petitioners,<br><br>          v.<br><br>**APPLE INC.,**<br><br>                    Defendant. | Case No. 1:21-mc-00098-TNM |

# MEMORANDUM ORDER

The Coalition for App Fairness (the "Coalition"), a nonprofit organization, moves to quash three substantially similar subpoenas that Apple Inc. has served in connection with ongoing antitrust litigation in the Northern District of California. Apple moves to transfer the matter to that court, or in the alternative compel. It argues in part that transfer is warranted given the history of the underlying litigation and the complexity of the issues raised in the Coalition's motion. The Court agrees and will transfer the matter.

## I.

Apple faces three antitrust lawsuits in the Northern District of California. One lawsuit was brought by Epic Games, a mobile app developer. *See Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (N.D. Cal.). The other two lawsuits are proposed class actions: *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR (N.D. Cal.), brought on behalf of a putative class of app purchasers (App Purchaser Case), and *Cameron v. Apple*, No. 4:19-cv-03074-YGR (N.D. Cal.), brought on behalf of a putative class of app developers (App Developer Case).

Statement P. & A. Supp. Mot. Quash Subpoenas ("Movants' Mem.") at 9, ECF No. 1-1.[1]  The trial in the *Epic Games* litigation concluded last summer, but the proposed class actions remain pending.

Apple issued its subpoenas in connection with the class actions.  *Id.*  The subpoenas target information about the Coalition's "formation, activities, meeting minutes, recruitment efforts, membership lists, and financing," among other things.[2]  *Id.* at 5.  The Coalition moves to quash, claiming it is "an independent nonprofit organization founded by industry-leading companies to advocate for freedom of choice and fair competition across the app ecosystem." *Id.* at 7.  Complying with the subpoenas, the Coalition says, would violate its First Amendment rights and "chill the candor of [the Coalition members'] discussions and the effectiveness of the Coalition's advocacy efforts."  *Id.* at 5.

Apple paints a different picture.  The Coalition is not a "'political' adversary or a bystander engaged in political speech protected by the First Amendment," but a litigation adversary.  Statement P. & A. Opp'n Mot. Quash ("Opp'n Mem.") at 7, ECF 5-3.  Apple claims Epic founded the Coalition during the *Epic Games* litigation to make app developers look like sympathetic figures taking on Apple in a David versus Goliath showdown.  *Id.* at 15–18.  Apple says that the members of the Coalition formed a well-funded, highly coordinated, biased team that willfully inserted itself into all three antitrust cases.  *See id.*  Apple's subpoenas seek

---

[1] All citations are to the page numbers generated by this Court's CM/ECF system.  All exhibit numbers refer to the document number generated by CM/ECF.

[2]  The subpoenas also seek documents from Forbes Tate Partners LLC, a public affairs firm hired by the Coalition, and Meghan DiMuzio, the Coalition's Executive Director and Vice President of Forbes Tate.  Movants' Mem. at 5.  Forbes Tate and DiMuzio join the Coalition in moving to quash and in opposing Apple's cross-motion to transfer or compel.

documents to prove this bias and oppose class certification in the App Purchaser and App Developer Cases.

The Coalition, headquartered in Washington, D.C., argues this district is the proper forum in which to bring its motion because Federal Rule of Civil Procedure 45(f) "mandates that motions seeking to quash, modify, or enforce a subpoena must be filed in the district court where compliance is required." Movants' Reply Supp. Mot. Quash ("Movants' Reply") at 10, ECF No. 11. Apple counters that the Court should transfer the motion to the Northern District of California because Judge Gonzalez Rogers and Magistrate Judge Hixson have managed discovery for all three antitrust cases and have the experience to efficiently adjudicate this dispute. Reply Supp. Cross Mot. Transfer at 12, ECF No. 17-1. The parties' motions are ripe.[3]

## II.

A court may transfer a motion to quash if the person or entity "subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The Coalition does not consent to a transfer, so the Court must determine whether "exceptional circumstances" exist.

Rule 45 does not define "exceptional circumstances," but the Advisory Committee Notes to the 2013 Amendment to Rule 45, subdivision (f), suggest "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation." In practice, courts look to a broader set of criteria, including "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Jud. Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C.

---

[3] Oral argument would not aid the Court's resolution of this matter, so it denies both Apple and the Coalition's requests for a hearing. *See* LCvR 78.1.

2014). In carrying out this analysis, a court's "prime concern should be avoiding burdens on local nonparties subject to subpoena." Fed. R. Civ. P 45(f) advisory committee's note to 2013 amendment.

Courts have transferred motions to quash "where [the] issuing court [had] already supervised substantial discovery and begun preparations for trial . . . [and] highly complex litigation where [the] issuing court [was] in [a] better position to rule . . . due to [its] familiarity with the full scope of issues involved." *Jud. Watch, Inc.* 307 F.R.D. at 34 (cleaned up).

### III.

Exceptional circumstances exist here for three reasons. First, the discovery dispute is complicated. Second, Judge Gonzalez Rogers and Magistrate Judge Hixson have deep familiarity with the underlying cases. And third, transfer reduces the risk of inconsistent rulings.

*First*, in the Court's experience, discovery disputes are often uncomplicated and can be quickly handled. But not this one. The Coalition asserts a First Amendment privilege against production. *See* Movants' Mem. at 16–26. Determining whether the privilege applies is a fact-intensive inquiry. *See Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 455 (D.D.C. 2002) ("Before compelling discovery [in cases where the First Amendment rights are implicated], [a] court must assess (1) whether the information goes to the heart of the lawsuit, (2) whether the party seeking the discovery sought the information through alternative sources, and (3) whether the party seeking disclosure made reasonable attempts to obtain the information elsewhere.") (cleaned up). The Coalition downplays the size of this task, but its own explanation of the law cuts against it. *See, e.g.*, Movants' Mem. at 15 (explaining the "framework for evaluating First Amendment privilege claims in discovery"). Accurate adjudication of this issue will require careful sifting of the facts in the underlying cases.

4

*Second*, ordinarily at the discovery stage a court knows little about the dispute.  But that is not true of the Northern District here.  The three antitrust actions have been pending for years—the App Purchaser Case, for example, was filed in 2011—and Judge Gonzalez Rogers and Magistrate Judge Hixson have managed each case.  Opp'n Mem. at 6.  They have "required comprehensive, coordinated discovery in all three cases," *id.* at 13, and Magistrate Judge Hixson "has established a streamlined process for resolving discovery disputes," *id.* at 23.  Apple claims—and the Coalition does not deny—that "Magistrate Judge Hixson has issued at least 18 orders deciding at least 25 discovery disputes that arose in the coordinated discovery proceedings required of these three actions, including disputes involving third party subpoenas." *Id.* at 6. More, Judge Gonzalez Rodgers' recent experience in the *Epic Games* trial could be particularly relevant in resolving the Coalition's motion.  *See* Cross Mot. Transfer Case Ex. 5 at 58, ECF No. 5-5 (Epic Games presentation used as an exhibit in the *Epic Games* litigation stating Epic needs to "create a broad coalition" because "Epic is not sympathetic"); *id.* at 77 (transcript of the cross examination of an Epic executive during the *Epic Games* litigation revealing Epic paid $300,000 to found the Coalition); *id.* at 82 (statement of work produced as an exhibit in the *Epic Games* litigation showing Epic hired Messina Group to create the Coalition).

If it were up to the Coalition, the Court would separately analyze the complexity of the pending motion and the Northern District's case-related knowledge.  Movants' Reply at 11–16 (analyzing in isolation each of Apple's justifications for "exceptional circumstances").  But when a matter calls for a fact-intensive inquiry *and* another court is deeply steeped in these same facts, there is no reason to ignore that combination.  Courts in this jurisdiction have transferred cases in similar circumstances.  *See, e.g.*, *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 25 (D.D.C. 2018) ("Petitioners' Motion to Quash rests on factual and legal developments that the

underlying court will be in a better position to manage."); *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015) (transferring case involving "complex securities issues" because it had "been pending in the District of Puerto Rico for almost three and a half years, and [the judge had] issued a multitude of orders resolving significant procedural and discovery disputes during that time").

*Third*, granting the Coalition's motion would risk inconsistent rulings. Apple has filed "nearly identical" motions to compel in the Northern District of Illinois and the Northern District of Texas seeking "substantially the same documents as sought by the subpoenas at issue here." Reply Supp. Cross Mot. Transfer at 10. Judge Starr has already transferred the Texas matter to the Northern District of California. *See Apple Inc. v. Match Group, Inc.*, No. 3:21-mc-163-X, Order (N.D. Tex. Aug. 3, 2021). And "courts have found exceptional circumstances warranting transferring subpoena-related motions to quash when transferring the matter is in the interests of judicial economy *and avoiding inconsistent results*." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) (cleaned up) (emphasis added).

Taken together, these three factors strongly favor transfer. And the Coalition provides no persuasive argument to the contrary. It repeatedly points to the "substantial time and expense" it has expended in briefing the Court. *See* Movants' Reply at 11; *see also id.* at 16. But "these motions are already fully briefed, making the burden light" of resolving them elsewhere. *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. at 26. And the Coalition and its public relations firm, Forbes Tate, engage with "Congress, state legislators, and foreign officials." Movants' Mem. at 7–8. When the movants are sophisticated parties accustomed to operating outside their home jurisdiction, "the general interest in protecting local nonparties by requiring local

6

resolution of subpoena-related disputes is significantly reduced." *Jud. Watch, Inc.*, 307 F.R.D. at 35.

For these reasons, it is hereby

**ORDERED** that Apple's [5] Cross-Motion to Transfer, or in the Alternative Compel, is GRANTED as to Apple's request to transfer;

**ORDERED** that the Clerk of Court shall transfer this matter to the United States District Court for the Northern District of California; it is further

**ORDERED** that the Clerk of Court shall close this matter.

**SO ORDERED.**

Dated: August 5, 2021                                                      TREVOR N. McFADDEN, U.S.D.J.